## GERSHOM CHENEY *v.* CORNELIUS C. PIERCE.

*Dower. Rents and Profits. Agency. Husband and Wife. Insanity. Practice. Evidence. Statute.*

The defendant was in possession of certain premises in which his mother had a dower interest, which became hers by the death of a former husband, but without any agreement as to rent. After the defendant's mother had married the plaintiff, the latter had lived on said premises for a time, and, after moving off, had controled the rent generally until in April, 1857, he addressed and delivered to the defendant the following instrument:

"CORNELIUS—Your mother thinks it is time for her to receive the rents and profits of her thirds, and I have no objection to her doing so. You will therefore make your payments to her as you and she can agree, and her receipt to you shall be as good and safe for you as though signed by me.

 Rutland, April 4, 1857.

MR. CORNELIUS C. PIERCE.         G. CHENEY."

After the decease of the plaintiff's wife, the defendant having occupied the premises for several years, the plaintiff brought an action against the defendant for the rent.

*Held,* that taking the whole instrument together, the language of which must be interpreted in the light of the existing state of things, and the relation of the parties to the property to which it refers, its scope and purpose was not merely to

create an agency in the wife, to be exercised in behalf and for the benefit of her husband, but the yielding of his marital right of control, and conferring on her the right to deal with the rents and profits of her own property for her own use, though not to the extent of creating a liability in him.

*Held,* that the instrument does not create an agency in the ordinary legal sense of that term. It is a power, coupled with an interest, to be exercised at the wife's will and not the husband's, till revoked, and to her use, not to his.

*Held,* that under said instrument the plaintiff's wife had a right to agree with the defendant to make repairs of buildings and fences on said premises and improvements, to the extent made in this case, though beyond what she, as tenant in dower, was by law bound to make; and to agree with the defendant to pay for her nursing, doctoring, and board at his house and elsewhere, for a few weeks, out of the rents and profits.

*Held,* that the plaintiff having lived with his wife during the seven or eight years of the defendant's use of said premises in the vicinity thereof, in ignorance of the manner of dealing with the rents and profits between the defendant and his mother, tends to confirm rather than to militate against, the construction put upon said instrument.

*Held,* that the paper in question is not limited to the rents that had accrued prior to its date.

*Held,* that the temporary insanity of the plaintiff's wife was not a perpetual revocation of her authority; that this being the case of a power coupled with an interest delivered to the defendant for his protection, if the plaintiff did not wish his wife to exercise the power after she was fully restored, it was his duty to revoke the power and notify the defendant of the revocation.

The jury rendered a verdict in favor of the defendant for $85.00, but the case does not show for what it was rendered. But the court correctly charged the jury that the plaintiff's wife had no power under the instrument to contract any debt, or create any liability against the plaintiff, and that the only benefit the defendant could have of the repairs and other bills for what he paid *for* or furnished *to* his mother, was by applying it upon the rent. *Held,* that it is to be presumed that the jury followed the instructions of the court, and that the $85.00 was based on some other legitimate claim for which the defendant was liable.

The plaintiff cannot, under an exception to a charge which was correct, have the judgment reversed because the jury did not follow it.

The defendant was properly admitted to testify in relation to his agreement with his mother though it appeared on trial that she had deceased.

ASSUMPSIT for use and occupation of real estate, with other common counts. Plea in offset, payment, etc. Trial by jury, September Term. 1865, KELLOGG, J. presiding.

The facts are so far stated in the opinion of the court, that it is only necessary to add, that the repairs referred to in the opinion consisted in building over old stone walls and by building new stone walls and new board fences, (the expense of which was in the whole $129.00) and by cementing the cellar of the dwelling house, and by

repairing, papering, whitewashing, and painting said dwelling house, and by repairing other buildings on the dower lands, (the expense of which was on the whole, $194.47,) and by setting out apple and pear trees and a strawberry bed on said dower land, (the expense of which was in the whole $56.25,) and by digging ditches on said dower lands to drain the same, (the expense of which was in the whole $46.00,) and the defendant testified that he charged the expenses of these repairs and improvements to the plaintiff in account, expecting that the same would be applied towards the rent of the dower lands.

The plaintiff testified that he did not know of the repairs made by the defendant, until he saw them stated in the defendant's account against him. It appeared that the plaintiff lived in the vicinity, or within a few miles of said premises, and was occasionally on them, both before and after said repairs were made.

The plaintiff objected to the defendant's being a witness in his own behalf, to prove the settlements with his mother for rent of the dower lands, or in respect to the repairs, it appearing on trial that she was deceased ; but the court overruled the objection, to which the plaintiff excepted.

It appeared that in the summer of 1859, the wife of the plaintiff and mother of the defendant, was sick and insane for two or three months, when she became better and her mental condition was greatly improved ; and that, in the month of July, 1862, she became very insane, and was taken to the Asylum for insane patients at Brattleboro, and remained there until the latter part of September in the same year, when she returned home much improved in health and mental condition. The evidence in respect to her mental condition after her sickness in the summer of 1859, was somewhat conflicting ; the evidence on the part of the plaintiff tending to show that she never, after that sickness, was fully restored to a sound mental condition, and the evidence on the part of the defendant tending to show that, after her sickness in 1859, she was fully restored to her reason, and was entirely rational up to the time of her sickness in the summer of 1862, when she was taken to the asylum for the insane as aforesaid, and after her return from the said asylum in the fall of 1862, during the remainder of her life.

It appeared that in December, 1862, the defendant took his mother, who was then sick, to his house in Clarendon, and that she remained there about three weeks, and was then, at her request, carried by him to the house of one Weeks, her brother, also in Clarendon, where she remained about two weeks ; and that, during this period of about five weeks, he, the defendant, procured the attendance and services of two physicians, and nursing for her, and that he paid the bills of the said physicians, amounting to $29.50, and also paid to the wife of Weeks $6.00 for nursing and taking care of his mother during the time which she spent at the house of Weeks, and also charged to the plaintiff in account $6.00 for keeping his mother while she was at his house, as aforesaid, and $8.50 for going after Doctor Peterson, one of the said physicians, who resided at Cuttingsville, about four miles distant, eleven times for her, or on her account, during the same period above mentioned.  The defendant testified that he made the payments above mentioned at the request of his mother, and on her promise to allow the same to him on account for the use and rents of her said dower lands.  It also appeared that the plaintiff knew nothing about the incurring of these expenses for physicians, or about these payments, at the time the same were made ; but the evidence on the part of the defendant tended to show that, on the morning before his mother went to the house of the said Weeks, the plaintiff was informed by Weeks of her intention to go to Weeks' house and remain a short time there, and that he told the said Weeks to get his pay of the defendant towards the rent of her dower lands for what expense she might make while there, and that the plaintiff afterwards said that the defendant ought to have pay for what he paid towards her "doctoring," in the settlement of the account against him for the use and rents of her dower lands.

The plaintiff requested the court to instruct the jury as follows, viz : That the said written instrument, dated April 4th, 1857, only authorized Mrs. Cheney to *receive payment* of the rents and profits of the dower property, and that it did not authorize her to make any contract with the defendant by which he was discharged of his obligation *to pay her*, and that it did not authorize her to appropriate the rents for the benefit of the estate of the defendant in the property ; and that, upon the defendant's evidence, the making of the repairs

Cheney *v.* Pierce.

and improvements by the defendant on the dower property, under the agreement between him and his mother, in respect to making such repairs and improvements, did not amount in law to a *payment* of the rent due from him for the use of the dower property ; and that the said written instrument did not authorize her to state or settle an open account in favor of the defendant against the plaintiff and apply the same in discharge of such rent, and that the power or authority to her, contained in said written instrument, referred only to a claim for rent due at the date of the same, and not to future accruing claims, and applied to *receiving* payment only upon the *rent*; and that the power or authority given to her by said written instrument was revoked by reason of her insanity.

The court declined so to instruct the jury, but, in respect to the matter of the said request, did instruct the jury as follows, viz :— That the said written instrument authorized the defendant to settle with his mother for the rent or use of her said dower lands or property, and to make payments to her, as well for the rent which was due at the date of the said instrument, as for the rent which might thereafter become due, and also authorized him to agree with her in respect to the amount which should be paid for such rent, and the manner and time in which the payments should be made ; and that under the provisions of said instrument, her receipts, if executed and delivered while the power and authority contained in said instrument was in full force, would be as effectual to discharge the plaintiff's claim to such rent as if they had been executed and delivered to the defendant by the plaintiff himself ; and that if the defendant, after receiving the said written instrument, made repairs and improvements on the dower property at the request of his mother, and on her promise that the expense of such repairs and improvements should be applied in payment of the rent which was, or which might be, due from him for the use of the dower property, as his testimony tended to show, such expenses ought to be allowed and applied in payment of whatever sum might be due from the defendant on account of such rent ; and that the same rule should be applied in considering the defendant's claims for payments on the bills of physicians, and for taking care of and nursing his mother, and for other expenses, during the time she was at his house and at the house of the said Weeks ;

but that the said instrument did not authorize her to make any agreement with the defendant, the effect of which would be to create any debt against the plaintiff, or to impose any liability upon him, and that, consequently, the expenses of the defendant for the said repairs or improvements, and for the bills of physicians, and for taking care of and nursing his mother while she was at his house and at the house of the said Weeks, should not be taken into consideration as furnishing any ground of claim in favor of the defendant against the plaintiff, or for any other purpose than to apply the same in payment of the rent due from the defendant for the use of the dower property; and that the power or authority contained in the instrument was suspended, so that it ceased to be operative or effectual, during the time in which the defendant's mother was in a state of mental insanity or derangement, and that the plaintiff would not be affected or bound by any act or agreement of hers had or made while she was in that state or condition, and that the question whether she was or was not insane or deranged in mind, at any particular time which was in controversy, was a question of fact, to be determined upon the evidence in the case; but if the jury should find that, after she became insane, she was fully restored to the exercise of her reason, the said instrument would again become operative and binding upon the plaintiff in the absence of any notice from the plaintiff to the defendant that the power, authority, or license conferred by the said instrument was revoked by him.

To the refusal of the court to instruct the jury agreeably to the plaintiff's requests, and to the instructions which were given to the jury in respect to the matter of the said requests, the plaintiff excepted. In respect to all other points which arose or were made in the case, the court gave such instructions to the jury as were satisfactory.

The jury returned a verdict in favor of the defendant on the pleas of set-off for $85.24, and judgment was rendered in favor of the defendant on the said verdict accordingly.

*W. H. Smith* and *Prout & Dunton,* for the plaintiff.

I. We urge that this paper, dated April 4th, 1857, can only be held to authorize the defendant to make payments to Mrs. Cheney, in such sums, and at such times as they should agree, on account of

the *first* year's rent of said dower lands, which was then due. That such payments must be *strictly* "*payments*"—such and such only as the defendant could legally charge the plaintiff with, and he be liable to account with the defendant for.

II. These rents were the property of the plaintiff, and the paper affords no ground for supposing he intended to *abandon* his property in them, or to assign them to his wife as her property independent of himself.

III. The paper in question constituted Mrs. Cheney a *special* agent for a *specific* purpose and with limited powers. She was authorized to "*receive* the rents," etc., to which the plaintiff had "no objection;" the rents were then due; the obligation to pay them existed; the debt was undisputed; the plaintiff demanded payment, and sent his wife to "*receive*" it. The order of the plaintiff upon defendant is *specific* to "make payments to her," and take her receipt therefor. The defendant is authorised to deal with her only because she "thinks it is time" to "*receive*" the rents, and the plaintiff has "no objection" and gives his assent that she may *receive the rents*,— *therefore*, you will make payments to her as my agent. All this is specific, and its meaning palpable. Dunlap's Paley, 201, 178, note (h.); Story's Agency, § 126; 1 Am. Lead. Cases, 560–1; *Denison* v. *Tyson*, 17 Vt., 549, 554; *Town* v. *Hendee*, 27 Vt., 258; *Cochran* v. *Richardson*, 33 Vt., 169; *Bigelow* v. *Stilphens*, 35 Vt., 521; 1 Parsons on Con. 50–1, and note (g.); *Rossiter* v. *Rossiter*, cited 1 Am. L. C., 541.

IV. Mrs. Cheney's authority, as the agent of her husband, the plaintiff, was revoked by her insanity. Dunlap's Paley, 189, note; Story's Agency, § 486–87; *Hudson* v. *Granger*, 7 C. L., 27, 30, 31; *Parker* v. *Smith*, 16 East. 582–5–6; *Minnett* v. *Forrester*, 4 Taunt. 541, 544; *Davis* v. *Lane*, 10 N. H.. 156; *Griswold* v. *Waddington*, 15 Johns. 57, 82; Collyer on Part. 272 and note 4, 273–4,

V. The case shows that the jury rendered a verdict for the defendant—and for the sum of $85.24—and it does not appear for what this verdict was rendered. It cannot be claimed, upon any construction, that this agent had authority to run the principal in debt.

VI. The defendant should not have been permitted to testify to his talks, arrangements and contracts with his mother, under the

34

provisions of Gen. Stat., 327, § 24; *Smith* v. *Smith*, Allen, 231; *Brynd* v. *McDonald*, *ib*. 293.

*E. Edgerton*, for the defendant.

I. The defendant was a competent witness in his own behalf. Gen. Stat., p. 327, § 24.

II. The court gave the proper construction to the written instrument addressed by the plaintiff to the defendant, bearing date April 4th, 1857. This paper constituted the plaintiff's wife, (Alleta Cheney), his *general* agent to manage and control the dower; and it conferred upon her as full and unlimited power to deal with the defendant concerning the dower, as he himself possessed.

III. The *insanity* of the agent did not work a *revocation* of the agent's authority. As a general proposition, it is not true that the insanity of either the principal or the agent is *ipso facto* an extinguishment of the agency. Story on Agency, § 481, note 1; p. 594; *Davis* v. *Lane*, 10 N. H., 156; 2 Kent, Com., Lect. 41, p. 645.

IV. The defendant was entitled to the value of his improvements made upon the property, by way of offset against the plaintiff's claim. 1st. The agent was empowered to settle with the defendant as they "*could agree*." She was vested with all the power in the premises, which the plaintiff himself possessed. Suppose then *he* had directed the improvements to be made, and had agreed to allow their value in payment of the rent, would he not be bound? In the same manner is he bound by *her* act, she having been fully empowered by him to make such an arrangement. 2d. The defendant's right to make this offset, is to be determined by the position of the parties at the time the improvements were made. 3d. There were other reversionary interests in the dower than the defendant's. It cannot be said that the improvements made, enured solely to the benefit of his own reversion alone.

The opinion of the court was delivered by

PECK, J. The action is assumpsit for use and occupation of real estate with other common counts, pleas in offset, payment, etc. The questions arise upon the plaintiff's claim, for use and occupation. The premises consist of about fifty acres of farming lands, dwelling house and outbuildings, in Clarendon, in which the plaintiff's wife, Alletta, had an estate in dower, set to her out of the estate of Chris-

topher Pierce, her former husband, in 1839. The defendant is the
son of Christopher Pierce and his wife, the said Alletta. The plaintiff
married the defendant's mother in 1843, and in 1844 he and his wife
moved on to the premises and resided there till April, 1853, when the
plaintiff let the premises on shares to one Davenport; by some
agreement with Davenport, John Pierce, a brother of the defendant,
soon after went into possession and occupied till April 1st, 1856,
when he sold to the defendant his interest in the other portion of the
farm, out of which this dower had been set, and made an executory
contract with the defendant for the sale also to the defendant of his
interest in the reversion of the dower, *at his mother's decease.* The
defendant went into possession of the dower April 1st, 1856, and has
occupied the same, in connection with the residue of the farm, ever
since. The case states that there never was any agreement between
the plaintiff and defendant in relation to the occupancy of the dower
by the defendant, but no question is made by the defendant but that
he went into possession under such circumstances as to be liable to
account for the use of the premises, if he has not already accounted.
The plaintiff claims to recover for the use of the dower from April
1st, 1856, to the time of the decease of his wife, December 19th,
1863.

The defendant relies, in substance, on payment from time to time,
and the jury have found the fact of payment in his favor. The ques-
tions of law, reserved by the exceptions, arise upon certain requests
of the plaintiff's counsel to charge the jury on this branch of the
case, and on the charge as given on the points raised by these re-
quests. These payments were made mostly to the plaintiff's wife,
along from time to time, and the rent settled and adjusted from time
to time between the defendant and the plaintiff's wife, as evidenced
by her receipts to the defendant in connection with oral evidence.
The question is as to the authority of the wife. To show such au-
thority, the defendant introduced the following written instrument,
signed by the plaintiff and addressed to the defendant, and shows its
delivery to him about the time of its date:

" CORNELIUS—Your mother thinks it is time for her to receive the
rents and profits of her thirds, and I have no objection to her doing
so. You will therefore make your payments to her as you and she

can agree, and her receipt to you shall be as good and safe for you as though signed by me.

Rutland, April 4th, 1857.

Mr. CORNELIUS C. PIERCE,                    G. CHENEY."

No question is made by the plaintiff's counsel but that this paper gave to the plaintiff's wife some authority to receive payment of the rents, and justified the defendant in making payments to some extent to her. But it appears that some of the payments relied on by the defendant were for repairs and improvements upon the premises made at the instance of the plaintiff's wife, under an agreement between her and the defendant that they should apply upon the claim for use and occupation, and that a considerable portion of these repairs were in excess of, and beyond what it would be her legal duty to make as between her, as tenant in dower, and the owner of the reversion. It is insisted that the instrument in question did not authorize her to receive payment in repairs, and more especially in such repairs as she, as tenant in dower, was not legally bound to make. If the paper created an agency merely to receive payment of the rent, for and in behalf of the plaintiff, and to his use, the proposition is correct, at least so far as relates to repairs she was not bound by law to make. The language of the instrument must be interpreted in the light of the existing state of things and the relation of the parties to the property to which it refers. The dower belonged to the wife,—the husband had the legal right, if he saw fit to exercise it, to receive and control the rents and profits. He had exercised that right to some extent, at least, from the time of the marriage to the time the defendant went into possession, by occupying it and renting it on shares to tenants, but had made no contract with the defendant in relation to his occupancy. It was competent for the plaintiff to yield or waive this right in favor of his wife. It is obvious from the language of the instrument that he intended by it to do so. He says to the defendant, your mother thinks it is time for *her* to receive the rents and profits of her thirds, and I have no objection to her doing so. The expression, "your mother thinks it is time for her to receive the rents and profits, etc.," obviously was not intended as a rebuke to the defendant for having unreasonably delayed payment; it has reference undoubtedly to the fact that up to that time he, the

plaintiff, had controlled the rents, and that his wife had expressed to him a wish to receive and control the rents and profits of her own land herself. Hence the expression which follows, " *I have no objection* to her doing so." This is not the language of a mere request to hasten payment, or a mere agency to be exercised for his benefit, it looks more like the language of yielding in favor of his wife his marital right of control over the annual avails of her estate. The words which follow favor this construction, " you will therefore make your payments to her *as you and she can agree,* and her receipt to you shall be as good and safe for you as though signed by me." Taking the whole instrument together, we think its scope and purpose was not merely to create an agency in the wife, to be exercised in behalf and for the benefit of her husband, but the yielding of his marital right of control, and conferring on her the right to deal with the rents and profits of her own property, for her use, though not to the extent of creating a liability on him. In one sense it may be said to be an agency, as it confers on his wife an authority she could not otherwise exercise without his consent; but it is not an agency in the ordinary legal sense of that term. It is a power coupled with an interest, to be exercised at her will and not his, till revoked, and to her use, not to his. In this view of the construction of the instrument it will readily be seen that the law of principal and agent, which has been so fully and ably discussed, is not strictly applicable to the case.

But it is said that if the plaintiff's wife had the right to deal with the rents and profits for her own benefit, that in reference to receiving payment in repairs, beyond what she as tenant in dower was by law bound to make, she has not done so, that such repairs were not for her benefit but for the benefit of the reversioner. But the nature and character of these repairs are not such as that we can say they were of no benefit to her. The objection to these repairs is mainly to their amount and extent, rather than to their character. We can not say they were of no benefit to the tenant for life; but, on the contrary, they were beneficial to the life estate to some extent; to what extent would depend on the duration of the life on which the life estate depended. The repairs so made out of the rents and profits would increase the amount of rents the defendant ought, and

would be bound thereafter, to pay; or if the defendant should cease to occupy, the premises would command a higher rent from others; so that if the plaintiff's wife had lived a great number of years, her investment in these repairs might have been a profitable one to her. Again, that was her former home; the defendant, her son, was in possession and owned in part, at least, the reversion; it was a place she frequently visited, and she might have had a feeling as well as an interest in favor of having the premises put and kept in a state of repair in excess of her legal obligation as tenant for life, thinking that she might live long enough to receive an equivalent, and if not, that it would enure to the benefit of her son. This may have been among the reasons that induced her to ask and obtain of her husband the power to control the rents and profits. There was some latitude for the judgment she had a right to exercise on the subject of repairs, and in the opinion of the court she did not exceed the right she had in virtue of her ownership of the property and the instrument in question, which authorizes the defendant to make the payments to his mother as he and she could agree. Much stress is laid by the plaintiff's counsel upon the fact, as he claims it to be, that the plaintiff, during the seven or eight years of the defendant's occupancy, was ignorant of the manner of dealing with the rents and profits between the defendant and his mother. But if we look outside of the instrument to the conduct of the parties, it tends to confirm rather than to militate against the construction we put upon this paper. The defendant and his mother certainly have acted upon this construction. If the plaintiff during this seven or eight years, living with his wife in the vicinity of the premises, remained in ignorance, not knowing how the rents and profits were paid or appropriated, or whether paid at all, at least to a great extent, it can hardly be accounted for upon any other ground than that he understood he had abandoned the right to, and control over them, to his wife. On the other hand, if he was cognizant of the manner of their dealing, as he interposed no objection, the same inference follows. In either view, it tends strongly to show that the parties have practically put the same construction upon the instrument as the court think it bears upon the face of it. It is claimed on the part of the plaintiff that the paper in question is limited to the rents that had accrued for the year prior

to its date. But the language of the instrument will not bear that construction. It obviously has reference to the future as well as the past rents and profits, and in this respect, also, the conduct of the parties shows they have so treated it. The payments were within the scope of the power.

It is claimed on the part of the plaintiff that the temporary insanity of the plaintiff's wife was a perpetual revocation of her authority, and that no act done by her after she was restored to reason, is binding on the plaintiff. It is unnecessary to decide whether this is the general rule appliable to a mere agency, or whether the temporary insanity only suspends the authority during the continuance of the disability. Nor is it necessary to say, if in some cases a temporary insanity of an agent is a perpetual revocation, whether it applies to a case where the principal knows of the insanity and is in the vicinity, so that he may revoke the agency if he chooses not to have it exercised after the disability of the agent is removed. It is sufficient to say that, in this case, the case of a power coupled with an interest like the one in question, delivered to the defendant for his protection, if the plaintiff did not wish his wife to exercise the power after she was fully restored, it was his duty to revoke the power and notify the defendant of the revocation.

These views being in accordance with the decision of the county court, we find no error in the ruling of that court either in denying the instructions asked by the plaintiff, or in the instructions given to the jury. The plaintiff claims that upon any construction of the instrument the plaintiff's wife had no power to subject the plaintiff to a liability; and that there is error because the case shows that the jury rendered a verdict in favor of the defendant for $85. and that the case does not show for what it was rendered. But the court charged the jury that the plaintiff's wife had no power under the instrument to contract any debt or create any liability against the plaintiff, and that the only benefit the defendant could have of the repairs and other bills for what he paid *for*, or furnished *to* his mother, was by applying it upon the rent. This was correct, and it is to be presumed that the jury followed the instructions of the court. The presumption is that the $85. is based on some other legitimate claim for which the defendant was liable. But whether that is so or

not, the plaintiff can not, under an exception to a charge which was correct, have the judgment reversed because the jury did not follow it. The remedy, if any, was by motion to set aside the verdict as being against evidence. No such question is before us.

It is insisted by the plaintiff's counsel that the county court erred in admitting the defendant to testify in relation to his agreements with his mother, it appearing that she was deceased. The provision in the statute on which the plaintiff relies is, *"that in all the actions, except actions on book account, where one of the original parties to the contract or cause of action in issue, and on trial, is dead, or is shown to the court to be insane, the other party shall not be admitted to testify in his favor, etc."* The *contract or cause of action in issue and on trial in this case,* is an implied contract by the defendant to the plaintiff, to pay *him* for the use and occupation of the premises. The parties to this contract are the plaintiff and the defendant, who are both living. If the plaintiff's wife should be regarded as the mere agent of the plaintiff, acting only in his behalf and for his benefit, as the plaintiff claims, she cannot be regarded as a party to the original contract or cause of action in issue and on trial. An agent through whom another negotiates a contract, is no party to the contract in any legal sense. The agent is the person, the instrument by means of which the principal enters into the contract, but the principal and not the agent is the party to the contract. Neither is an executor or administrator a party in this case, so as to bring the case within the subsequent clause of the statute excluding the party when the other party is an executor or administrator. Neither does the plaintiff in any way represent in this suit, the wife or her estate. If he recovers he recovers to his own use and not to the use of his late wife's estate, or her representatives. If he fails to recover, the result of the suit will not prejudice her estate or her heirs or representatives. Regarding the plaintiff's wife in the light in which she stands according to the construction we have given to the instrument under which she acted, neither she nor her legal representatives are parties to the contract or cause of action in issue and on trial, because the plaintiff does not succeed to her rights or prosecute for the benefit of her estate; nor can her estate be affected by the result of the suit. The object of the provision of the statute was to protect the estates of deceased

parties. The case does not come within the mischief intended to be guarded against. It is neither within the letter nor the spirit of the statute.

The defendant was properly admitted as a witness, and the judgment is affirmed.