## FREEMAN JAMES v. TOWN OF STARKSBORO.

### *Soldier's Bounty. Town Meeting. Vote. Evidence.*

At a meeting duly warned, the defendant town adopted the following resolution :

"*Resolved*, That from this time until the 5th day of January next, or until the quota of this town is filled, the selectmen are hereby authorized to enlist all able bodied men, who by their instructions from the adjutant general of the state of Vermont can be credited on the quota due the national government by this town on the last call of the President of the United States for 300,000. The selectmen are authorized to pay all such men enlisted by them the sum of not exceeding $400, * * * *"

*Held*, that the effect of this resolution was to put the business of enlisting men for the quota of the town into the hands of the selectmen; and to make out a right to recover under it, the plaintiff must show not only that he enlisted and was mustered to the credit of the town on that quota, but also, that the selectmen, or some one of them, agreed to pay him a bounty.

*Held*, that a statement made by one of the selectmen of said town after the passage of said resolution, to one C, a captain in the service, in reply to a letter written by C, that said town was paying $400 bounty, did not amount to a general offer of a bounty to any one having knowledge of such statement.

ASSUMPSIT to recover a town bounty. Plea, the general issue. Trial by jury, December term, 1869, PIERPOINT, C. J., presiding.

The plaintiff introduced in evidence a certified copy of " General Order No. 2," dated November 2, 1863 ; a certified copy of warning and proceedings of a town meeting in Starksboro, held on the 19th day of December, 1863, by which it appeared that the defendant town, under a proper article in the warning, adopted the resolution set forth in the *syllabus* above ; also a certified copy of warning and proceedings of a town meeting in Starksboro, held on the 4th day of December, 1863, the warning being dated November 23, 1863 ; also a certified copy of the town credit-books in the adjutant general's office, by which it appeared that the plaintiff and four others re-enlisted to the credit of the defendant town, on the 16th day of December, 1863, and were the first five men to enlist and be mustered in to the credit of said town, after October 17, 1863. This paper was objected to by the defendants, but admitted, subject to its legal effect, etc.

The plaintiff also gave evidence tending to prove his former enlistment and service, etc., and that on the 15th day of December, 1863, he re-enlisted at Brandy Station, and caused himself to be credited to Starksboro ; that he was mustered in on the 22d or 23d, and the muster was dated back to the 16th of December ; that before he enlisted he had a letter from one Eddy, who lived in Starksboro, and was the agent of the plaintiff to draw his state pay, informing him that the town of Starksboro was paying $300 each for recruits ; that afterwards, and the night before he was mustered in, he was told that one Cook, who was a captain in the same regiment, had written to Mr. Hawkins, one of the selectmen of Starksboro, to enquire what bounty that town was paying, and had received a reply stating that they were paying $400. And said Cook testified that he did write such a letter, at the instance of some one other than the plaintiff, and did receive such a reply, which was lost. That he, the plaintiff, then received a furlough, and went to Starksboro, where he saw Hawkins on the 1st of January, 1864, and told him that he had re-enlisted to the credit of Starksboro, and claimed the town bounty ; that Hawkins said the quota was not full, lacking one or two men, and he would see

if re-enlisted men would be allowed to count on the quota,—that he did not know whether they could; that on the 4th of January he saw Hawkins again, who then said the quota was full, but perhaps some one would be rejected, so the plaintiff could have a chance; that when the men so. enlisted came to be mustered, one or two were thrown out, but the quota was immediately filled by other men, and on again applying to Hawkins, he said that he had been to Capt. Dunshee, the superintendent of recruiting for that district, and had learned that re-enlisted men would not be allowed to count on the quota, and so they had filled it up; that plaintiff subsequently demanded his bounty, which the town refused to pay. It was not claimed that Eddy was an officer of the town, or authorized to act for the town, or that any intercourse took place between the plaintiff, or any one in his behalf, and the authorities of the town, previous to his enlistment.

Upon this evidence, and without going into the evidence on the part of the defendants, the court directed a verdict for the defendants, to which decision the plaintiff excepted.

*A. V. Spaulding*, for the plaintiff.

*E. J. Phelps*, for the defendants.

The opinion of the court was delivered by

WHEELER, J. The warning for the meeting of December 4, 1863, was posted only eleven days previous to the meeting, unless the day of posting it and the day of the meeting both be reckoned. It is conceded that but one of them should be reckoned, and that the proceedings of that meeting are invalid for that reason. The plaintiff's claim therefore must rest wholly upon the vote passed at the meeting of December 19, 1863, and the proceedings under it.

The effect of this vote was to put the business of enlisting men for the quota of the town, under the call of October 17, 1863, entirely into the hands of the selectmen, under certain limitations not here material.

To make out a right to recover under this vote, it was neces-

sary for the plaintiff to show, not only that he enlisted and was mustered to the credit of the town on that quota, but also that the selectmen, or some one of them, agreed to pay him a bounty.    He admits this, but claims that he did introduce evidence which tended to show such an agreement, as well as his enlistment, muster and credit to the town.    His testimony did tend to show everything necessary except the agreement, but it did not tend to show that.    The letter from Hawkins, the selectman, to Cook, was not a general offer of a bounty to any one to whom knowledge of it should happen to come, but was merely a statement of the terms upon which contracts for bounties could be made with the town, which was made to Cook for his information in reply to his inquiry.    It was not intended to be acted upon in any way except by making contracts with the proper agents of the town.

The testimony, as to what occurred directly between the plaintiff and Hawkins, tended rather to show that there was not, than that there was, any agreement between them that the plaintiff should have a bounty.    There being no evidence tending to show an agreement with any of the selectmen for a bounty, the verdict for the defendants was properly directed.

The judgment of the county court is affirmed.