\* ALBERT H. CHASE v. TOWN OF MIDDLESEX.

*Soldier's Bounty.  Vote.  Selectmen.  Contract.  Rescision.
Quantum Meruit.*

The defendant town voted "to instruct the selectmen to pay each enlisted man $200, when he shall be mustered into the service of the United States, up to the number of 18." The plaintiff actually applied upon this quota of 18 men, and was one of the first 18 to be mustered into the service from the town after the vote. *Held* that he was entitled to the bounty offered in said vote, although he enlisted without expectation of the bounty or procurement of the selectmen, and although the selectmen had contracted with others before the plaintiff was mustered.

The selectmen had no authority under said vote to contract with others except upon condition that such others should be so seasonably mustered as to be among the 18 covered by the terms of the vote. And so far as the town was concerned, no contract could be perfected until there was a muster.

Said vote was passed Nov. 23d, and at a subsequent meeting, Dec. 24th, it was voted to instruct the selectmen to pay no bounties to men enlisted before Nov. 23d, but the latter vote was passed without any article in the warning to that effect, or referring to it. *Held* that it could not operate to rescind the former vote.

Under such a vote, the selectmen had no authority to say that any man who should bring himself within the terms of the offer of the town should be denied the benefit of that offer; therefore a notice by them to the plaintiff, before he was mustered, that they should not pay him any bounty, would not affect his claim.

Refusal to allow the plaintiff to be transferred to any other town, although requested and notified that otherwise a bounty would be claimed, *held* to be an acceptance of the plaintiff.

The town voted at the last meeting to pay an additional bounty of $150, but expressly limited the vote to those 'who enlisted on and after Nov. 23d. *Held* that those who enlisted prior to that date were not entitled to the additional bounty, but as to those enlisting subsequently on that quota the vote was legal and entitled them to the additional bounty.

The plaintiff could recover only on an express contract, not upon a *quantum meruit.*

ASSUMPSIT for a soldier's bounty.  Plea, general issue.  Trial by jury, March term, 1870, PECK, J., presiding.

It was conceded the plaintiff enlisted in *August*, 1863, from the town of Middlesex, where he resided, and to the credit of the town of Middlesex, in the 3d battery of Vermont volunteers, without the request or knowledge of said town, and without any expectation of bounty for so doing. On the 17*th October*, 1863, the President called for 300,000 volunteers.  The quota of defendant under this call was 18 men.  On the 23*d November*, 1863, for the purpose of filling this quota, the defendant town

met in town meeting duly warned, and voted to instruct the selectmen to pay each enlisted man, to the number of 18, $200 when mustered into the service. At this time, by an order of the adjutant general, the plaintiff could not count on this quota, he having enlisted in a new regiment. This order is No. 1 and 3, in the adjutant general's report of 1864, and may be referred to. This order continued in force until the 21*st of December*, 1863, when it was rescinded by order No. 6, in same book, which may be referred to. The defendant, not supposing the plaintiff could count on that quota, had, prior to the 21st of December, engaged and contracted with 18 men to enlist and be mustered in from Middlesex to fill that quota; but they had signed no enlistment contract prior to the modification of said order, No. 1 and 3. *On the 24th of December*, the town, at a meeting duly called, voted to pay $150 bounty in addition to the bounty voted on the 23d of November, and also voted that no bounty should be paid to men who had enlisted prior to the 23d of November. The warning for this meeting was as follows: "To see if the town will vote to pay an additional bounty of one hundred and fifty dollars to each volunteer, who has, or may enlist, to fill up the quota of this town under the last call of the President for 300,000 men." On the 25th of December, the plaintiff, through his agent, asked the selectmen of defendant if the town would pay the plaintiff any bounty. The selectmen replied, No. The plaintiff then asked that he might be transferred. This the selectmen declined. He never personally, or through any one else, had any further conversation with the selectmen until after he was mustered in, when, through one Herrick, he demanded a bounty. The plaintiff was mustered in *January* 1, 1864, to the credit of the town of Middlesex, and counted according to the adjutant general's books as the 9th man on the quota of 18 men of said Middlesex, under the call aforesaid. The 18 men who were contracted with, prior to the 21st of December, by the selectmen, all signed their enlistment contract prior to that time, except five. These five had been contracted with verbally prior to the 21st of December, but did not sign the enlistment contract until the 25th, when one of them signed the enlistment contract. On the 28th three signed, and on the 31st one

signed. These 18 men were all mustered in to the credit of Middlesex by the 5th of January, 1864, but seven of them were not mustered in until after the 1st of January, 1864.

The plaintiff's evidence tended to show that other towns paid from $300 to $500 for soldiers about the 21st of December, 1863, and along for some time about that time, before and after, and that at that time he was offered, just before he was mustered in, on same day, $300 by one town and $500 by another town, to muster in to credit of such town. To this defendant objected, but the evidence was received subject to objections; to which defendant excepted. It was conceded defendant paid their 18 men aforesaid only $350 each, which sum the town did pay them.

The plaintiff gave evidence (which was undisputed) that after the modification of said order, December 21, 1863, and after the town had voted to pay two hundred dollars bounty November 23, and the one hundred and fifty dollars bounty December 24, 1863, he applied to the selectmen of defendant town and notified them that he expected to receive said bounties if he mustered to the credit of said town. That said selectmen told him that he did not apply on said quota, and that in consequence they could not pay him said bounties. That the plaintiff then called the attention of the selectmen to the order of the adjutant general, which allowed men to be transferred from the credit of one town to the credit of another town, on the written consent of the selectmen of the town to which they stood credited, and requested such selectmen of Middlesex to give their consent that he might be transferred to some other town that would pay him a bounty, which said selectmen refused to do, and insisted on holding the plaintiff to the credit of the said town of Middlesex.

The plaintiff further gave evidence to show that the next day or next day but one, after he was mustered, and before the town had had men mustered in his place to fill the said quota, he notified the selectmen of defendant town that he had mustered to their credit and should claim a bounty.

The plaintiff further proved by one of the selectmen of the town for the year succeeding the plaintiff's enlistment and muster, that for men to fill the next call after October 17, 1863, which was

86

made the following spring, the said town paid a bounty of six hundred dollars for men to fill the quota on said call, and that if he, the plaintiff, was not or had not been counted on the call of October, 17, 1863, he would have counted on the next call; that the town had the benefit of plaintiff's credit on that quota. The plaintiff claimed to recover of the town of Middlesex as much bounty as he could have obtained from another town, or as much as his credit was worth to him or as he could have obtained for it, on the ground that the defendant refused to consent to his transfer to some other town and insisted on appropriating such credit to their own benefit, and if not that sum, then $350 voted by the town, or the $200 specified in the first vote. The defendant insisted the plaintiff could not recover at all. The court, however, ruled *pro forma* that the plaintiff was not entitled to recover the larger sum, but *pro forma* ruled that plaintiff was entitled to recover the $200, the first bounty voted by said town, and *pro forma* that he was not entitled to recover the second bounty so voted of one hundred and fifty dollars.

After the evidence was closed, the court inquired of the counsel if there was any question of fact in dispute upon which either side wished to go to the jury, and the counsel on both sides stated that there was not, and that they made no question as to the facts. Thereupon the court ruled as above stated, subject to exceptions by both parties, with an agreement of counsel that if the supreme court should decide that the plaintiff could recover, and recover a larger sum than this court allowed, that court might order the verdict filled up accordingly without remanding the case.

Exceptions by both parties.

*Randall & Durant*, for the plaintiff.

*Heaton & Reed* and *B. F. Fifield*, for the defendant.

The opinion of the court was delivered by

STEELE, J. At a duly warned meeting to see about filling " the quota of the town as assessed by the governor," it was " voted unanimously to instruct the selectmen to pay each enlisted man

$200, when he shall be mustered into the service of the United States, up to the number of 18." The plaintiff actually applied upon this quota of 18 men, and was one of the first eighteen to be mustered into the service from the town after the vote.

I. To his recovery of the promised bounty it is objected, first, that he enlisted without the procurement of the selectmen. The answer to this is—the selectmen were instructed to pay the $200, not merely to men secured by themselves, but " to each enlisted man " up to the number of 18, as fast as mustered.

2. It is also objected that the selectmen had contracted with others before the plaintiff was mustered. They had no authority to contract with others, except upon condition that such others should be so seasonably mustered as to be among the 18 covered by the terms of the vote of the town. Again, so far as the town was concerned, no contract could be perfected until there was a muster, and they were not mustered until after the plaintiff.

3. It is next objected that the town, at their meeting of December 24, 1863, instructed the selectmen to pay no bounties to men enlisted before November 23, 1863, and plaintiff was enlisted before that day. But it is very clear that this vote cannot operate to rescind the vote of November 23, because there was no article referring to it in the warning. Nor can it operate to interpret the previous vote, the terms of that vote being clear and unmistakable without such aid. After this last vote and before the plaintiff was mustered, the selectmen notified him that they should pay him no bounty. But this notice was ineffectual to prejudice the plaintiff's right, for two reasons : first, because the selectmen had no authority to say that any man who should bring himself within the terms of the offer of the town should be denied the benefit of that offer ; and secondly, because the selectmen, while they notified the plaintiff that they should not pay him, insisted on keeping his credit, and refused to allow the soldier to be transferred to any other town, although requested and notified that otherwise a bounty would be claimed by him. This, as was decided in *Kittredge* v. *Walden*, amounted to an acceptance of the man. Again, the notice which the selectmen gave the plaintiff that they should not pay him was not unqualified, but was ex-

pressly stated to be upon the ground that the plaintiff, being a battery recruit, could not apply on their quota. This was a mistake, and the plaintiff did apply on their quota.

We see no tenable ground of objection to the plaintiff's recovery of the bounty of $200.

II.   The plaintiff cannot recover the additional bounty of $150 for the reason that the town, at the time of voting that bounty, expressly excluded the plaintiff from its benefit by limiting it to such soldiers as enlisted on and after November 23, 1863. That vote in terms declared that no bounties should be paid to men who enlisted prior to November 23. So far as the vote would in its terms affect bounties voted at previous meetings, it would be illegal, because there was no article in the warning in respect to rescinding previous votes ; but so far as it expressed the intention of the town as to the bounty voted at that meeting, it was legal, because the town was at liberty to put such conditions and limitations to their vote of a new bounty on that occasion as they should see fit.

III.   The plaintiff's claim to recover, as upon a *quantum meruit*, what his credit was worth at the market price, cannot be sustained. The plaintiff can only recover upon an express contract. Had the town neglected to vote a bounty he could recover nothing, no matter how valuable his services. This has been repeatedly held.

The town having voted a bounty, the plaintiff can recover according to the terms of that vote, and no more. We see no evidence of any vote to pay the class of men to which the plaintiff belonged any bounty beyond the $200.

Judgment affirmed.