NELSON POQUET *v.* TOWN OF NORTH HERO.

*Soldier's Bounty. Evidence. Agency. Statute, § 24, ch. 36, Gen. Sts.*

A vote that the selectmen be authorized to pay a bounty, not exceeding a sum named, to volunteers applying on a given quota, within a given time, is not an open general offer, which, being accepted, constitutes a contract, but requires the action of the selectmen.

The fact that the plaintiff's enlistment operated to the benefit of the town, and saved them the necessity of procuring another man and paying him a bounty, gave him no legal claim upon the town, unless they agreed to pay him.

That the selectman made such agreement may be shown by the plaintiff himself as a witness, notwithstanding the selectman who made the agreement is dead.

An agent or officer through whom another makes a contract is, in no legal sense, a party to the contract; therefore his death does not exclude the other party from testifying, under § 24, ch. 36, Gen. Sts.

Liability of towns to pay bounty arises only upon proof of an *express* contract; therefore the evidence, in a case like this, bearing upon the question as to whether there was such contract, should be submitted to the jury.

ASSUMPSIT for a town bounty. Plea, the general issue and trial by jury, December term, 1870, REDFIELD, J., presiding.

On trial the plaintiff introduced a copy of the record of a town meeting of the defendant town, held December 14th, 1863, at which the town voted as follows:

*Resolved,* that the selectmen of the town of North Hero be and they are hereby authorized to pay a bounty not exceeding three hundred dollars to each volunteer who shall be mustered into the

United States service before January 6th, 1864, and applied on the quota of this town to be raised under the last call of the President of the United States for volunteers.

The plaintiff also introduced general order No. 2 of the adjutant general of this state, dated November 2d, 1863, and a copy of town quota ledger of the defendant town from the adjutant general's office, which tended to show that the quota of the defendant town, under the call of October 17th, 1863, was nine; under call of February 1st, 1864, was four; and that the deficiency under previous calls was three, and that credits for result of draft in 1863 were four. The plaintiff also introduced a copy from credit book of the adjutant general as to the defendant town, and also certificate of assistant adjutant general.

From this and other testimony of the plaintiff, it appeared that he re-enlisted in company " C " of the 5th Vermont regiment, at Brandy Station, Virginia, December 15th, 1863, and was mustered to the credit of the defendant, December 16th, 1863, and was applied on their quota under the call of October 17th, 1863.

The plaintiff testified, in substance, that he re-enlisted and was mustered as above stated; that news came to his company that the defendant town, and some other towns in that vicinity, were going to pay bounties; that he enlisted expecting a bounty from the town; that he did not know when he re-enlisted and was mustered what bounty the defendant was paying, and that he had no other particular reason for re-enlisting; that he did not know how the town would be notified, but from information received there he supposed the commanding officer would notify the town; that he came home on a furlough the last of December, 1863, and that, on or about January 15th, 1864, he had a talk with Dr. Haines, then one of the selectmen of the defendant town; that Dr. Haines then asked him if he expected a bounty from the town, and that he told him that he did; that Dr. Haines asked him if he knew what they were paying, and he told him he understood $300; that Haines asked him what he was going to do with his money, and told him that he would take it and keep it for the plaintiff's benefit, and that Haines further told him that he had got a letter notifying him that the plaintiff had re-enlisted. He fur-

ther testified that he did not request his commanding officer to notify the town of his re-enlistment, but only told him that he was going for the defendant town; that he did not know when he re-enlisted and was mustered that the defendant town was paying a bounty; that he never talked with any of the selectmen about the bounty except Haines, and that he had never called on the town for the bounty, except as above, until this suit was brought in September, 1869.

The plaintiff here rested his case.

It was conceded that the selectman, Dr. Haines, died in June, 1864, and the defendant seasonably objected to that part of the plaintiff's testimony purporting to give a conversation between him and said Haines, but it was admitted, to which the defendant excepted.

The defendant introduced J. McBride, who testified that he was one of the selectmen of the defendant town from March, 1863, to March, 1864; that on the 14th day of December, 1863, the selectmen wrote a letter to the adjutant general of this state to ascertain how many men were required from the defendant town, to which he replied; that the selectmen understood from his letter that they were required to furnish six men to fill their quota and no more, and that thereupon they enlisted six men and paid them a bounty of three hundred dollars each; that they tried to get men for two hundred dollars, but did not succeed. He further testified that the selectmen of the defendant town never received any notice of the plaintiff's re-enlistment until they received it from the adjutant general, on or about January 24th, 1864.

Dr. Haines was the chairman of the board of selectmen, and kept the papers connected with the business, and he and McBride did all the business as to enlisting soldiers, and there was no arrangement that one should act without the concurrence of the other. Stuart, the other selectman, had nothing to do with the business.

It further appeared, from the testimony on both sides, that the said six men enlisted by the selectmen were mustered into the United States' service, to the credit of the defendant town, January 5th, 1864.

The defendant introduced further testimony tending to show that a letter from the defendant town after said town meeting could not have reached the plaintiff for several days after he was mustered as aforesaid.

The defendant claimed that said vote was not an open vote, but was restricted, so that it was necessary for the plaintiff to show an express engagement with the selectmen to entitle him to recover. That the plaintiff could not recover unless he knew, or had heard at the time he re-enlisted, that the defendant town had voted a bounty, and he relied upon it. That the actual quota of the town at that time was only six, and that the selectmen having furnished six men and had them mustered before receiving notice of the plaintiff's re-enlistment, the plaintiff could not recover. The court declined so to charge.

The court charged the jury, among other things not excepted to, that if the jury find, as the evidence tended to show, that the quota of the defendant town, under the call of the President, of October 17th, 1863, was nine men, and that the plaintiff by his re-enlistment supplied one of the number to fill such quota, and that such quota has not been otherwise filled; that the plaintiff re-enlisted expecting a bounty from the defendant, in the manner his testimony tended to show, and that he notified Dr. Haines, the chairman of the board of selectmen, of his re-enlistment and muster in to the credit of the defendant town, and for such service and enlistment he was expecting a bounty of three hundred dollars, under said vote of the defendant, in the manner and at the time testified to by the plaintiff, and that the selectmen were officially notified by the adjutant and inspector general of the plaintiff's re-enlistment and credit to said town on said quota, as stated by the witness McBride, and the selectmen acquiesced in the plaintiff's continued service, under the expectation of a bounty, and without notice or suggestion that the defendant did not intend to pay such expected bounty, that the law would imply the assent of the selectmen and undertaking in behalf of the defendant town to pay said bounty.

To this charge of the court, and the refusal to charge as requested, the defendant also excepted.

*Brigham & Waterman,* for the defendants.

*M. O. Heath*, for the plaintiff.

The opinion of the court was delivered by

Royce, J. This was an action of assumpsit to recover a town bounty. Plea, the general issue, and trial by jury. The vote of the defendant town, under which the plaintiff claims to recover the bounty sued for, is so like the vote in *Johnson* v. *Bolton*, in 43 Vt., 303, that the construction given to the vote in that case must be regarded as an authority in this.

Judge Redfield says, in that case, that the vote is not an open, general offer, which being accepted, constitutes a contract. The plaintiff re-enlisted in the field, December 15th, 1863, and was mustered in to the credit of the defendant town December 16th, 1863, and applied on their quota, under the call of October 17th, 1863. The plaintiff's testimony tended to show that he re-enlisted, expecting a bounty from the defendant town ; but this expectation must have been based upon the information which he testifies came to his company, that the defendant town, and some other towns in that vicinity, were going to pay bounties, for the vote of the defendant town, which authorized the payment of bounties under the call of October 17, was passed on the 14th of December, and the plaintiff re-enlisted the next day after, at Brandy Station, in Virginia.

It is not claimed that the selectmen, whose duty it was under the vote to fill the quota, made any contract with, or incurred any liability to, the plaintiff to procure his re-enlistment.

It has been repeatedly held, that to entitle a soldier to recover under a vote like this, it was incumbent on him to prove an agreement, upon the part of the town, to pay him the bounty. *James* v. *Starksboro*, 42 Vt., 602. *Chase* v. *Middlesex*, 43 Vt., 679. *Johnson* v. *Bolton*, ib., 303.

And even though his enlistment operated to the benefit of the town, and saved them the necessity of procuring another man, and paying him a bounty, this gives him no legal claim upon the town, unless they have agreed to pay him. *Hatch* v. *Fairfax*, 43 Vt., 319.

To prove such agreement, or that the town by its selectmen had adopted his act, the plaintiff testified, under the objection of the defendant, to the conversation with Dr. Haines, one of the select-

men of defendant town, detailed in the exceptions. The defendant claimed that, inasmuch as Dr. Haines died in June, 1864, this evidence was inadmissible, under § 24 of ch. 36 of the General Statutes.

That statute provides, that where one of the original parties to the contract or cause of action in issue, and on trial, is dead, the other party shall not be permitted to testify in his own favor. Dr. Haines cannot be said to have been a party to the contract, in the sense in which the term is used in the statute. He was simply one of the agents of the town, and authorized by their vote to make contracts for the town; and a mere agent or officer, through whom another negotiates a contract, is in no legal sense a party to the contract. So that, as the parties appear of record, we think this evidence was properly admitted. This view is fully sustained by *Cheney* v. *Pierce*, 38 Vt., 515.

The plaintiff does not claim that he had any other communication with the selectmen than the one detailed with Dr. Haines, upon the subject of his enlistment, or bounty.

The court are not entirely agreed upon the question, as to whether the jury would have been justified from all the evidence in finding a contract, in fact, to pay the bounty, or such an adoption of the act of the plaintiff as would bind the town to the payment of the bounty. But we are agreed that, assuming all to be true, which the evidence tended to show, the court erred in holding that the law would imply an undertaking in behalf of defendant town to pay the bounty. If towns were in the first instance made the debtors of such men as enlisted, and applied upon their quota, in the absence of any express contract, as to the compensation to be paid, the law would imply a promise to pay a reasonable compensation, or such sum as the service was reasonably worth; but towns can only be made liable to pay for such service in this class of cases upon proof of an express contract. Hence, no such implication arises. And, instead of the law implying a promise or contract to pay from such a state of facts, the evidence should have been submitted to the jury, to be weighed by them upon the question, whether any such contract was made.

The judgment of the county court is reversed, and case remanded.