WILLIAM MCAULAY *v.* THE WESTERN VERMONT RAILROAD COMPANY AND MYRON CLARK.

*Railroads. Ejectment. Trespass. Estoppel. Notice. Evidence.*

Payment of land damages is a condition precedent to the acquiring of title by a railroad company of lands taken for their road.

But this condition is for the benefit of the land owner and may be waived by him, even by parol.

Where such owner acquiesces in the occupation of his land for the construction of a railroad without pre-payment of the land damages, upon an understanding or contract for future payment by the company, and the road is constructed and put in operation, he cannot afterwards, on failure to obtain payment, maintain ejectment or trespass for the land.

Whether under such circumstances he would still retain an equitable lien on the land, *quere.*

The mere prosecution of a controversy by the land owner with the company, before commissioners and by appeal in the county court, as to the *amount* of the damages, is not such a prohibition of the taking of the land by the company without the prepayment of land damages, as is necessary to enable him to maintain trespass or ejectment for the land after the road is put in operation.

Notice by such land owner given to the laborers on the railroad, employed by the contractors in its construction, requiring them to desist from working on his land, until he shall have received his land damages, is not sufficient notice or prohibition to the company to preserve his right to maintain trespass or ejectment against them after the road is put in operation.

The declarations of one tending to show he had knowledge of a certain fact are admissible in evidence for the purpose of proving such knowledge.

EJECTMENT. Plea, the general issue, and trial by jury at the December Term, 1859,—KELLOGG, J., presiding.

On trial it was admitted by the parties that the premises described in the declaration were originally the property of the plaintiff, who had title thereto ; that the same were taken by the Western Vermont Railroad Company for the purposes of their road in the summer or fall of 1850, and the road duly surveyed, located and constructed thereon, and the construction completed in the year 1851 ; that the parties not agreeing as to the price of the land, the defendants procured the damages to be appraised by commissioners in the manner provided by law, on the 4th of September, 1851, being after the construction of the road on the premises had been commenced ; that the plaintiff, on the 13th of October, 1851, appealed from the award of the commmissioners, and that on the 24th of May, 1853, a re-appraisal took place, by commissioners appointed by the county court, as required by law, and the sum of two thousand and fifty dollars was awarded to the plaintiff for his damages ; that the award, being returned to the county court, was confirmed at the December Term, 1854 ; that all preliminary proceedings in the survey, location and recording of the road, and in the appraisal of damages, were regular and in conformity with the requirements of the statute ; and that the land had been occupied for the purposes of a railroad track ever since up to the present time.

It was further admitted that the defendant Clark took a lease of such railroad from the Western Vermont Railroad Company, for three years from the 3d of November, 1853 ; that on the 4th of October, 1854, an order was made by the chancellor in a foreclosure suit then pending on a mortgage of the railroad and franchise by which Shepherd Knapp was appointed receiver of the rents of the road, and that Clark continued to run the same and accounted for the proceeds under the order of the court, and that Clark had continued to run the road under such order and with the consent of the company and the trustees of its bondholders, as well as of the receiver, up the 1st of January, 1857, when the decree of foreclosure obtained upon the first mortgage became absolute, and the title to the road and franchise passed to the trustees under the mortgage.

The plaintiff introduced evidence tending to show that he had never been paid the damages awarded to him, and rested his case.

The defendants thereupon gave in evidence the following contract, in writing, having proved that the same was executed by the plaintiff and accepted by the Railroad Company before the land was taken by them as aforesaid : "We, the undersigned, do hereby agree to and with the Western Vermont Railroad Company, to receive in payment for each of our damages, in consequence of the building of the road of said company through each of our lands, the stock of said company at its par value.

January 1, 1850."

The defendants further gave evidence tending to show that certificates of stock were made out by the company, in due and usual form, in the name of the plaintiff, to the amount of three thousand two hundred dollars and upwards, and placed in the hands of Mr. Canfield, agent and attorney of the company, to be delivered to the plaintiff in payment of his land damages ; that Mr. Canfield, at different times, informed the plaintiff that he had such stock, and offered to give it to him under such contract; but the plaintiff refused to receive it, and declared that he need not tender it as he never would accept it ; and that after the award was confirmed in the county court, Mr. Canfield offered the stock to the attorney of record of the plaintiff in that proceeding, who declined to accept it ; and that he afterwards delivered the same into court by depositing the same with the clerk, to the amount of three thousand two hundred dollars, for the use of the plaintiff, where it has ever since remained.

The defendants also proved that the plaintiff continued to use the premises, of which the land in question originally formed part, till after the commencement of this suit.

The plaintiff claimed that the agreement given in evidence by the defendants was obtained by fraudulent representations and concealment in regard to the location of the road, made by Martin C. Deming, who, during the survey and construction of the Western Vermont Railroad, was a director of the company, residing in Arlington, in the vicinity of the premises, and was, at the time of trial, deceased ; and among other testimony introduced

by him, which he claimed tended to establish this fact, was that of one Lathrop, who testified as follows :

" I know that there were two lines surveyed near McAulay's mills. I had several conversations with Deming, the substance of which was that McAulay must be induced some way or another to take his damages in stock, because all the rest were going to. I had a conversation with Deming after the first survey was made and he seemed to be very much pleased, and said that it would now suit McAulay, and he would take his damages in stock now. After the line was changed he told me he was afraid McAulay would flare up. He used to ask me frequently if I knew when McAulay was coming up, he wanted to see him. I do not think that Deming ever said anything to me about seeing McAulay before he went up home. These conversations took place while the survey was in progress."

To the admission of these declarations of Deming the defendants objected on the ground that they were not made to the plaintiff, nor brought to his knowledge, and did not form a part of any official action on the part of Deming, as director ; and that they were not the admissions of the company, nor evidence against them as such—especially those which were made previous to the survey or location of the road. The objection was overruled by the court, and the evidence admitted — to which the defendants excepted.

There was no evidence that the plaintiff ever interposed in any way to prevent the occupation of the land for the purposes of the road, otherwise than by forbidding the hands engaged in its construction from working on the same until his damages were settled, and this on a single occasion, at the commencement of the work on his land. He then and afterwards resided in North Adams, Massachusetts.

The defendants gave evidence tending to show that there was no fraud or false representation made to the plaintiff for the purpose of inducing him to agree to take stock for his land damages.

The defendants requested the court to charge the jury :

1st. That the plaintiff's evidence had no legal tendency to prove such a fraud as would be sufficient to invalidate his written contract.

2d. That if this contract were so invalidated, the action of ejectment could not be maintained under the circumstances of this case, but the plaintiff's remedy would be by action at law against the company, for the amount of his land damages, or a proceeding in equity to recover them of those in possession of the road.

3d. That the course taken by the plaintiff, after the discovery of the alleged fraud, was not such as to entitle him to maintain this action, even if the fraud were proved and the action were otherwise maintainable.

The court declined so to charge the jury, but did charge them in reference to the question of fraud, in substance as follows :

That if the signature of the plaintiff to the said agreement was procured or induced by a representation made to him by any director or other agent of the company, in regard to any material fact respecting the location of the line of the railroad through the premises of the plaintiff, which was untrue in fact, and was so known to be by the party making the same, and such representation was made for the purpose of inducing the plaintiff to act thereon, and did produce a false impression in the mind of the plaintiff respecting the actual location of the line of the railroad through his land, and if the plaintiff, when he signed the agreement, was ignorant of the actual location of the line of the railroad through his land, and would not have signed the agreement if the fact so represented to him had been communicated to him before or at the time he signed the same, then the said agreement might be avoided by the plaintiff, as having been fraudulently obtained from him, and should be treated as being wholly void and of no effect whatever as against him, and that it having been conceded that no compensation had been made to or provided for the plaintiff, on account of the damages occasioned to him by the taking and occupancy of the premises for the purposes of the railroad, agreeably to the provisions of the laws of this State applicable to such case; therefore the entry of the defendants upon the premises, and their occupancy of the same, should in that case be treated as having been made and continued without right, and that the plaintiff would be entitled to recover in this action.

To the refusal of the court to charge the jury as requested,

and to that part of the charge which related to the question of fraud, as above stated, the defendants excepted.

*Edward J. Phelps*, for the defendants.

I. The declarations of Deming, not connected with any official act, were improperly admitted as evidence against the defendants, of the facts therein stated.

The private conversations of the director are not the admissions of the corporation; 1 Greenleaf's Ev., sec. 436 ; *Underwood* v. *Hart*, 23 Vt. 120 ; Angell & Ames on Corp., p. 299–300, and cases there cited.

II. Whether the contract was obtained by fraud or not, the action of ejectment to recover the railroad cannot be maintained.

1. As the land was regularly taken, the damages legally assessed, and a judgment rendered therefor. the road meanwhile having been constructed over the land, with the plaintiff's acquiescence, the license thereby required is irrevocable. His remedy thenceforth is for the damages, not the land ; though he might have prohibited the original entry until the damages were paid ; *Taylor* v. *Waters*, 7 Taun. 374 ; *Winter* v. *Brockwell*, 8 East. 308 ; *B. & M. Railway* v. *Bartlett*, 3 Cush. 120 ; Redfield on Railways, p. 106, 109, 110, and notes ; *Water Power Co.* v. *Chamber*, 1 Stock. Ch. 471 ; *Hall* v. *Chaffee*, 13 Vt. 150 ; *Miller* v *Auburn & Sy. R.*, 6 Hill 61 ; Angell on Watercourses, sec. 286 to 294, and cases cited ; *Chapin* v. *Noyes*, 6 Wend. 461 ; *Cook* v. *Stearns*, 11 Mass. 538 ; *Hitchcock* v. *Dan. & Nor. R. Co.*, 25 Conn. 516 ; *Hanley* v. *Howall*, 19 Conn. 162 ; *Whittlesey* v. *Hart., Prov. & Fish. R R. Co.*, 23 Conn. 421.

If the contract to take payment in stock was induced by fraud, the plaintiff would thereby become entitled to the money. He would not only have a remedy against the company, but in equity, if not relinquished, a claim upon the mortgagees to whom the road had passed.

2. Even if the license was revocable, the plaintiff did not attempt to revoke it. Upon discovery of the alleged fraud, he simply refused to take the stock, and claim the money, but did not interpose or give notice to prevent further occupation or expenditure on the land.

There is no rule better settled in regard to fraud than that

which requires the party affected to avail himself of the defence
at the earliest moment, so as to place the adverse party, as far as
possible, *in statu quo*.   If he lie by after knowledge of the fraud,
until rights have accrued and expenses have been incurred, on
the faith of the contract which he claims to avoid he will be
regarded as having waived the defence ;  *Stevenson* v. *Newenham*,
76 Eng. Com. Law 285.

The appraisal of damages, the appeal by the plaintiff, and the
reappraisal, all occurred after the discovery by the plaintiff of
the alleged fraud.   In the meantime the entire construction upon
the land had been begun and completed without any objection on
the part of the plaintiff, who merely claimed his damages.   It
was not until the commencement of this suit, *six years afterward*,
that he first asserted a claim to the repossession of the land.

The prohibition by the plaintiff of the hands on the railroad
from continuing their work on the land in question, until his
damages were paid, amounts to nothing.

It appears that the laborers were in the employ of contractors,
not of the company.   Notice to laborers found digging on a rail-
road is not notice to the corporation.   They are not agents of
the corporation for any such purpose, especially when they are
exclusively in the employ of other parties.   The written agree-
ment, as acted on, was in itself a license, which the plaintiff has
never attempted to revoke until the commencement of this suit.

This case, therefore, distinctly presents the question whether,
if the land owner waives his right to require payment before the
occupation of his land, agrees in writing to look to the company
for his damages, when ascertained, in a manner different from the
mode of payment prescribed by the charter, and permits the
construction of the road over his land meanwhile, he can revoke
the license after it has been acted on by the erection of expen-
sive and permanent works, and reclaim the premises.

And whether, if such agreement was obtained by false repre-
sentations, and, on discovery of the fraud before the agreement
is acted on, he does not choose to rescind it, but elects still to
permit the company to go on under it, only claiming to be paid
in money instead of in the manner agreed on, he can still, after
the road has been built and occupied for years, avail himself

of the fraud to recall his license and recover back the land.

3. It is not necessary for the defendants to resort to a court of equity. The case differs very widely from that of a contract for a conveyance of land between individuals where the law looks to the title, and the title cannot pass except by deed. Here the land is taken by the public for public use in the exercise of the right of eminent domain. No deed or other act of the owner is requisite to pass the title which vests on payment of the price agreed on or awarded by commissioners. The owner is not bound to give possession before payment, but he may waive this right; and if he does, or if he accept any other provision for payment than the one he has a right to insist on, and permits the land to be "*taken*," the title passes. Payment to the satisfaction of the owner has been made or provided for. And when the land so taken has been occupied by an expensive work, in which the public have a large interest and the right of general control, he can no more in law than in equity or in honesty recall his waiver, repudiate his license, and regain the title and possession of the land; Redfield on Railways, p. 125, and cases there cited.

*A. L. Miner* and *A. B. Gardner*, for the plaintiff.

1. The payment of the damages is a condition precedent to the right to enter upon the land for any other purpose than to determine the location of the road.

The legislature did not intend or design that land holders should be compelled to have their property taken for railroad purposes without an adequate compensation *first* being made for the same. See Comp. Stat. 195, sec. 20 to 29, being the general railroad law under which this road was constructed. If the legislature have done so, the act is in violation of the constitution of the United States and of this State; Constitution U. S., art. 1, sec. 10; *Ib.*, art. 6, sec. 2; Amendment 5, art. 5; Constitution Vt, art. 2; *Gardner* v. *Newburg*, 2 Johns. Chan. 166; *People* v. *Platt*, 17 Johns. 215; *Stevens* v. *Middlesex Canal Co.*, 12 Mass. 468; *Bloodgood* v. *M. & H. R. R. Co.*, 18 Wend, 18; *Baltimore & Susq. R. R. Co.* v. *Nesbit*, 10 Howard 395; *Stacy* v. *Vt. Central R. R. Co.*, 27 Vt. 39; Redfield on Railways, 147 to 150 and notes.

McAulay v. Western Vt. R. R. Co. et al.

It follows if the company make their railroad without first pay-ing the damages, they are *tort feasors* and are liable in trespass or ejectment.

If trespass could have been maintained when the company first entered, ejectment certainly can be after they have kept the exclusive possession for a space of five or six years.

. It is impossible to collect of the company ; they were utterly and hopelessly insolvent before the damages were determined.

The plaintiff had no power to have the damages determined ; he must wait the action of the company ; Comp. Stat. 195, sec. 20.

2. It is claimed by the defendant that the testimony of J. B. Lathrop, as to Deming's knowledge of the location of the road, and the location being changed so as to injure the plaintiff's property, before the plaintiff signed the contract, was improperly admitted.

Deming was the director of the company, residing in Arling-ton, and by virtue of his office the general agent of the company. He procured the plaintiff to sign the contract, and is not now living.

Corporations *must* act by their officers and agents.

Unless proof of what their officers say and do in getting up fraudulent contracts can be offered, *no proof can be had.*

The acts of Deming are the *res gesta,* the fraud of the company.

This proof was offered only for the purpose of showing Dem-ing's knowledge that the location of the road had been changed before he procured the plaintiff to sign the contract, and for that purpose it was entirely proper.

REDFIELD, Ch. J. The commencement of the construction of the defendant's road was before damages were appraised, which was on the 4th of September, 1851. The location and survey of the road was of course before work began, and so is the date of the writing signed by the plaintiff. But it was not, in fact, signed by the plaintiff until about the time of the first appraisal. The construction of the road was completed in 1851, and it immediately went into operation and has so continued until the present time.

The first question which arose in the trial of the action was

in relation to the declarations of Martin C. Deming, a director of the company, as to his knowledge of the claim of the plaintiff, that the road should be located in a particular place, or else, that he would not take stock for his land damages, and that it had not been so located, and his consequent expectation that he would not accept the stock, the declarations being before the alleged fraud and deception practiced by said Deming, in inducing the plaintiff, as he claims, to sign the agreement to accept stock. We do not regard these declarations as mere admissions of the agent of the company. They are facts in themselves, that is knowledge of the location of the road, and that it was in a place, where the plaintiff did not desire it, and that if its location there was known to him, he would not accept the stock of the company for damages. If, instead of these admissions or declarations, it had been shown that some person gave Deming notice of these facts near the time of his alleged fraud practiced upon the plaintiff, there could be no question of the importance and competency of the evidence. But the real inquiry is whether the fact that at the time he induced the plaintiff to sign the agreement he knew that the road was located where the plaintiff did not desire it, and represented to the plaintiff that it was laid in another place, and where he did desire it, in order to obtain the plaintiff's signature to the agreement, is competent to go to the jury. The most satisfactory evidence of such knowledge is his own declaration to that effect. Some one might have informed Deming of this fact, and he not understand them, or he might possibly understand them precisely contrary to the fact. But there is no possibility that he would state a fact of which he had no knowledge.

II. It being admitted, as it seems to be, that the plaintiff had full knowledge of the proceedings of the company to locate and construct their road upon his land, before and during all the time of the construction, and that he did not interfere in any way to prevent the occupation of the land for the purposes of the road, otherwise than by forbidding the hands working on the road until his damages were paid, and that on a single occasion, it becomes an important inquiry, whether he can now maintain ejectment for the land, by reason of the non-payment of his damages. This is certainly a question of some practical importance,

but does not appear to have been distinctly submitted, in any form, to the jury, although the requests of the defendants' counsel sufficiently point towards the question.

There can be no doubt, upon the state of facts detailed in the case, that the jury must have come to the conclusion that the plaintiff made no objection to having the road constructed where it was located, except to the workmen upon a single occasion. This is not sufficient objection, for two reasons. First, it was not made in the proper quarter to the proper agents of the company. These workmen were in no sense either the agents or the servants of the company; they were the mere servants of the contractor. And in addition to this, being upon a single occasion, it is quite susceptible of the construction, that upon all other occasions, the plaintiff not only made no remonstrances, but that he virtually assented to the construction and operation of the road. The fact that no effectual steps were taken either to stop the proceedings of the company, or enforce the payment of land damages, for a great number of years and even for a considerable period after the final assessment, confirms this view. Under this state of facts the question arises, can the plaintiff maintain ejectment until his land damages are paid, or the company have acquired title by the statute of limitations? This seems to have been the view of the plaintiff in bringing the action, and it seems to have been viewed much in the same light at the trial. But we are unable to adopt this conclusion.

It is undoubtedly true that according to our general railroad statutes and the special charters in this State, the payment or deposit of the amount of the land damages, assessed or agreed, is a condition precedent to the vesting of the title, or of any right in the company to construct their road, and that if they proceed in such construction without this, they are trespassers, and this has been repeatedly so held by this court.

This may have led to the misapprehension in the present case. But it is certainly a very serious misapprehension. In these great public works the shortest period of clear acquiescence, so as fairly to lead the company to infer that the party intends to waive his claim for present payment, will be held to conclude the right to assert the claim in any such form as to stop the company in

21

the progress of their works, and especially to stop the running of the road after it has been put in operation, whereby the public acquire important interests in its continuance. The party does not, of course, lose his claim or the right to enforce it, in all proper modes. He may possibly have some rights analogous to the vendor's lien in England, and here, until the legislature cut it off. But it is certain, according to the English decisions, that he cannot stop the works and especially the trains upon the road, if he has, in any sense, for the shortest period, clearly given the company, either by his express assent, or by his silence, to understand that he did not intend to object to their proceeding with their construction and operation.

And laying the written agreement wholly out of the case, there is a good deal in the case which looks as if the company were fairly justified in supposing the plaintiff did not object, and was therefore willing that they should go forward in the construction of their road, if they would only *agree* to pay him the money for his land damages. He does not seem to have insisted that the first appraisal should be deposited during the pendency of the appeal, and before the work proceeded farther. His great desire seems to have been that the damages should be agreed upon and that he should be released from all claim under the written agreement to accept stock. To this extent his remonstrances were loud and sufficiently intelligible. And if it should appear that he also made himself well understood by the company, or their proper agents, acting on their behalf in these matters, at the time, in regard to insisting upon the payment or deposit of his land damages, according to the statute and before the works proceeded, and that the company understood, at the time, that they were proceeding in defiance of his remonstrances, and upon their own responsibility merely, from first to last, it is certainly not necessary to assert here that they are not liable now in trespass and ejectment. The English courts, certainly those of equity, do not give much countenance to the idea of stopping the operation of a railway, for any mere informality in the organization of the company, or in the construction of their road, or in taking land. Lord Cottenham, Chancellor, says, in *Duke of Leeds* v. *Earl of Amherst*, 2 Phill. ch. cases 117, 123: "If a

McAulay *v.* Western Vt. R. R. Co. et al.

party, having a right, stands by and sees another dealing with the property in a manner inconsistent with that right, and makes no objection while the act is in progress, he cannot afterwards complain."

In the present case it is not precisely a parol license under which the company claim to have built the road. Their record title to the land would be complete, with the addition of the fact of payment, or the deposit of the amount of the appraisal. That is a fact resting always *in pais.* And being so, although a condition precedent, it may be waived by the party in whose favor it exists, and this by parol merely. The waiver may be by parol as well as the performance. And the waiver may be partial as well as total. If there was then a waiver in fact, either express or implied by acquiescence in the proceedings of the company, to the extent of not insisting upon pre-payment as a condition precedent, but consenting to let the damages be and remain a mere debt, with or without a lien upon the road bed, as the law may turn out to be, then it is impossible to regard the defendants, in any sense, in the light of trespassers, or liable in ejectment. One might as well expect to assert a mechanic's lien upon railway structures, which cannot be done. In *Dunn* v. *North Missouri Railw.,* 24 Missouri 493, it is decided that such lien cannot exist, both on account of the nature of the works and the public interest in them ; Redfield on Railways 231, 510.

Judgment reversed and case remanded.