Kittell *v.* Railroad Co.

L. H. KITTELL AND W. F. WILLEY, ADMR. *v.* MISSISQUOI
R. R. CO. AND OTHERS.

L. M. HART *v.* SAME.

S. A. BUGBEE *v.* ST. JOHNSBURY AND L. C. R. R. CO.

C. F. DEAN v. SAME.

[IN CHANCERY.]

*Railroad Land Damages, Equitable Lien for. Agent a
Witness when one Party to Contract Deceased.
Statute of Limitations. Mortgagee. Injunction.*

1. LAND DAMAGES, EQUITABLE LIEN FOR.—The owner of land taken for
   railroad purposes has an equitable lien which may be enforced by bill in
   chancery; and the court has the power to grant an injunction to
   restrain the company from occupying the land until the damages are
   paid. And this is so, although the railroad has been costructed and
   operated for several years; and although the company entered upon the
   land, and constructed its road, with the consent of the owner, under an
   arrangement, by which the damages were to be adjusted in the future,
   and if the parties could not agree, the damages were to be appraised by
   the commissioners, and were so appraised, the title of the land remain-
   ing in the original owner as the proceedings of the commissoners had
   never been recorded.
2. WAIVER OF LIEN.—Such consent to enter upon the land, to construct
   the road, the arrangement as to the damages, their appraisal by the
   commissioners, do not constitute a waiver;—a clear and express contract
   is necessary. *McAuley* v. *The Western Vt. R. R. Co.*, 33 Vt., 311, distin-
   guished.
3. EMINENT DOMAIN.– There was no contract of sale; and the law as to
   eminent domain governs the case.
4. MORTGAGE.—The record title remaining in the original owner the mort-
   gagee was chargable with notice of the equitable lien.
5. WITNESS, AGENT, ONE PARTY DECEASED.—The statute, R. L. ss. 1002-3,
   by which the surviving party to a contract is excluded as a witness
   applies only to parties, and not their agents.

6.  STATUE OF LIMITATIONS.—The award was made in December, 1875; the suit was brought in 1880, and, therefore, is not barred.
7.  COMMISSIONERS may be appointed at any time while the damages remain unliquidated.
8.  RECORD LOST. PAROL EVIDENCE was admissible to prove the appointment of commissioners, it being shown that the commission was lost.
9.  DAMAGES. CROSSINGS. WATER-COURSE. CATTLE-PASS.—The orators are entitled to recover $600, the amount awarded by the commissioners, and interest from the date of entry upon the land; and $200 allowed by the master, because the defendants failed to construct the crossings, cattle-pass, and to restore the water-course, as required by the commissioners.
10. R. L. secs. 1002–3, witness act; sec. 3371, railroad, suit when property is taken without appraisal, construed.

BILL in chancery to recover land damages of a railroad company. Heard on bill, answer, replication, and report of a special master, September Term, 1882, Franklin County. TAFT, Chancellor, ordered *pro forma* that the bill be dismissed. The case was referred to Judge POWERS, who reported substantially as follows :

I find from the undisputed facts in said cause that the said Missisquoi Railroad Company was a corporation duly chartered by the Legislature of this State with power to construct its railroad from St. Albans to Richford, in the County of Franklin, and to take lands for that purpose; that said company prior to December 1, 1870, surveyed and located its said railroad over the lands of the orators' intestate, J. C. Kittell, described in the bill of complaint in this cause and on or about said date entered upon said lands for the purpose of constructing said railroad, finishing the construction thereof in 1871; that said company on the 28th day of November, 1870, executed a mortgage of its said railroad to the defendants, Smith, Cheney, and Stevens as trustees, as set forth in said bill, and that under said deed and a decree of said Court of Chancery, said trustees on the 15th day of November, 1877, took possession of said railroad and have since operated the same over the lands aforesaid; that after the construction of said railroad and until said November 15, 1877, said company operated said railroad over the lands aforesaid; that the orators have duly demanded the damages occasioned by the taking, entry upon, construction and operation of said railroad upon the lands aforesaid, and that no part of the same has been paid; that said J. C. Kittell deceased in 1874, and the orators, were duly appointed administrators upon his estate in December, 1874; that no deposit of the sum of six hundred ($600) dollars in the First National Bank of St. Albans or elsewhere to the credit of the orators was ever made by the defendants or any of them, as required by orators' exhibit No. 3, thereinafter mentioned ; that Hon. Homer E. Royce and Edward A. Smith at the time said railroad was constructed were a committee of the directors empowered to settle land damages upon the line of said road in the town of Sheldon where the lands in question were situated.

The defendants offered said Royce and Smith as witnesses to show an agreement made by said J. C. Kittell with them as such committee before the entry upon said lands, whereby said Kittell consented that said company might enter upon said land for the purpose of constructing its said railroad, leaving

the question as to the amount and payment of damages for future adjustment. The orators objected to the admissibility of these witnesses on the ground that the said J. C. Kittell, with whom said agreement was alleged to have been made, is now deceased. The master overruled this objection to which the orators excepted; and from the testimony of said witnesses taken subject to the orators' objection and exception, I find that in the fall of 1870, after the location of said railroad over the lands described in said bill and before entry upon the same by said company for the purpose of constructing its said railroad, said Royce and Smith, as such committee as aforesaid, called upon J. C. Kittell at his hotel in Sheldon and inquired of him what he asked for his damages for the taking of his said lands for the uses of said railroad; that said Kittell declined to fix upon a sum; that said committee informed Kittell that said company would require said lands soon for the purpose of constructing its road, and unless the damages were agreed upon they would have to call out the commissioners to appraise the same; that said Kittell thereupon told them that the company might enter upon the land and build its road, and after the road was built, if they could not agree upon the damages to be paid him, the same should be ascertained by leaving it out, or having the same fixed by the commissioners. To this the committee assented; and the company entered upon said lands and built its road without further arrangements respecting said damages.

If the testimony of said Royce and Smith is not admissible under the objection made thereto and ought not to be considered upon the issue to which it relates, then I find that there is no evidence in the case tending to show that the said J. C. Kittell ever consented to the entry upon said lands by said company for the purpose of constructing its railroad.

There was no evidence in the case tending to show that said J. C. Kittell, in his lifetime, or the orators as his administrators, ever consented to the operating of said railroad over said lands, or the occupation thereof for that purpose, or that he or they ever forbid or protested against such operation and occupancy.

There was no evidence in the case tending to show that said J. C. Kittell and said company ever agreed upon the amount of his said damages, or the time or manner of the payment of the same; and the orators as his administrators have made no such agreement.

The orators offered in evidence a paper purporting to be the report of appraisal of damages to the estate of J. C. Kittell by E. Henry Powell, D. D. Wead and J. D. Soule, commissioners, dated Dec. 6, 1875 (Ex. No. 3). The defendants objected to the admission of this report on the ground that there was no proof of the due appointment of said commissioners. Thereupon the orators notified the defendants' solicitor to produce the original certificate of the appointment of said commissioners, and a reasonable time having elapsed in which the defendants might produce the same if in their custody, the orators offered as witnesses the said Powell, Wead and Soule, named in said report as commissioners, who each testified, against the defendants' objection and exception, in substance, that they signed said report and performed the duties and services stated and recited therein at the dates and in the manner therein stated; that neither of them had in their possession the commission under which they acted, and had never seen the same since the day of the hearing before them. Said Powell testified that he drew up said report and that at that time he had in his possession a paper certifying to his, said Wead's and said Soule's appointment as commissioners to perform the services detailed in said report; that said paper was not now in his possession; that he had made search for it and did not know its whereabouts. Said Edward A. Smith testified that it was his recollection that the said R. R. Co. joined the orators in calling out said commissioners.

If upon the evidence in connection with said Exhibit No. 3, it is warrantable for the master to find the due appointment of said Powell Wead and Soule as

such commissioners, then I find such appointment, and admitting Exhibit No. 3 in evidence, find all the facts therein stated to be true. If the evidence aforesaid is not admissible then there is no evidence in the case of the appointment of said Powell, Wead and Soule as such commissioners.

I further find that said report (Exhibit 3) was not recorded in the town clerk's office in Sheldon until October 14, 1879, and that no appeal was taken from the appraisal therein made, and said sum of six hundred dollars has never been paid nor any deposit thereof made as ordered by said report.

I further find that neither of the defendants has constructed or maintained the crossings or cattle-pass mentioned in said report, nor restored the watercourse therein referred to, and that in consequence of the defendants' neglect in those respects the orators have suffered damages up to date to the amount of $200.

The orators introduced evidence as to the actual damages sustained by reason of the taking of said lands for railroad purposes from which I find, if said Exhibit No. 3 is not admissible or not binding upon the parties to this suit or upon said trustees as to the appraisal therein made, that the damages sustained at the date of this report including said sum of $200, last above mentioned is the sum of $1,000.

I further find that said Missisquoi R. R. Co. occupied said land for railroad purposes from the time of its entry thereon till November 15, 1877, and since that date until the present time said trustees, Smith, Cheeney and Stevens, have occupied the same for like purposes.

If Exhibit No. 3 is a valid assessment of the orators' said damages and the orators are entitled to decree therefor, they should have interest thereon from December 1, 1870, the date of the said company's entry on said land, unless the court should be of opinion that interest should run from the date of said Exhibit 3.

## Award of commissioners (Exhibit No. 3).

"Whereas the Missisquoi Railroad Company have located their road over land owned by the estate of Jonathan C. Kittell of Sheldon in the county of Franklin and State of Vermont, which land so taken by said company for said road is situated in the town of Sheldon in the county of Franklin, and is described as follows, to wit:
		*		*		*		(Description of the land ).

And whereas the said company and the said Jonathan Kittell's estate have not been able to agree upon the amount of damages therefor, and application having been made to the undersigned by said company to appraise said damages, we, having been duly appointed commissioners for that purpose under and according to the act incorporating said company, duly notified said company and the said Jonathan Kittell's estate that we would meet		*		*		*		to appraise said damages		*		*		*		and at the time and place aforesaid we met and the said company appeared before us by their attorney, and L. H. Kittell, administrator of said Jonathan Kittell's estate, did appear.
				*		*		*

We appraise and award to the said Jonathan Kittell's estate the sum of six hundred dollars as and for his damages for the said land above described and so taken for said road, and for all damages that may accrue to said estate by reason of the location of said road over said premises, which sum we order and direct the said company to deposit in the First National Bank at St. Albans to the credit of the said Jonathan Kittell's estate.

And we do further order and direct that said company shall at once restore the water-course cut off in the construction of said road by laying the same across the line of said road under the railroad track, and build and maintain for the accommodation of said farm the following crossings, to wit: two ordinary farm crossings, one opposite the old house on said farm just west of the telegraph pole, and one near the switch as the same is now established, within

the limits of the land described herein; also a cattle pass with suitable guards opposite the barns."

[Signed by Commissioners.]

The case of Hart v. R. R. Co. also arose in Franklin County. All that is necessary to state of the master's report is as follows:

"That after said company surveyed and located its railroad upon the orator's said land, and on the 1st day of October, 1871, and before said company had made any entry upon said lands for the purpose of constructing its said railroad, the orator and said company agreed upon the sum of four hundred dollars as the orator's damages occasioned by the construction of said railroad upon said lands, and that on the 1st day of June, 1879, the defendant, Smith, in behalf of said trustees paid to the orator as part of such land damages, the sum of two hundred (200) dollars, and that the balance of said sum of four hundred dollars has never been paid, although demand therefor has been made by the orator before bringing this suit; that the orator never gave any consent to said company to enter upon said lands for the purpose of constructing its said railroad, nor has he ever given any consent to any of the defendants to occupy said lands for the operation of said railroad; that the orator has never made any agreement with the defendants or either of them respecting the payment of said damages, and no agreement touching the same except the agreement of October 1, 1871, as aforesaid, by which the amount of said damages was fixed."

The cases, *Susan A. Bugbee* v. *St. Johnsbury & Lake Champlain R. R. Co.*, and *Chester F. Dean* v. *Same*, came up from Caledonia County, on demurrer to the bills. The facts are so nearly like those of the two former cases that it is unnecessary to state them.

*Edson, Cross & Start*, for the orators Kittell & Willey, and Hart.

The company had no common law right to take the land. All the power it had was derived from the legislature; but the legislature cannot grant what is prohibited by the constitution. Private property may be taken for public uses when necessity requires it, but only with the consent of the owner or the representative body of the freemen, and when taken in either of said ways the owner must receive an equivalent, and that equivalent must be in money. I submit that the constitutional right to an equivalent in money is not affected by the fact as to how the property is taken, whether by consent of the owner or consent of the representative body of the freemen. The constitutional right to the equivalent in money attaches, "whenever (no matter how) any person's property is taken for the use of the public."

If taken by the owner's consent, unless he go further and consent to forego any equivalent or agrees to accept another equivalent, the constitutional right to the money equivalent is absolute and does not lapse.

The only prohibition there is in the constitution to taking property for public uses, is, when both the consent of the owner and the consent of the representative body of the freemen is wanting; with such consent there is no prohibition, but in place thereof a constitutional obligation is imposed to pay an equivalent in money, an obligation which attaches upon the taking; and which must be fulfilled in order to deprive the owner of title or vest title for the purposes of the public use. Pierce R. R. 162-3 Power to take regulated wholly by statute. R. L., ss. 3356-7-8.

*Owner's Remedy.*—We insist that the statute remedy is not that adequate remedy insuring to the land-owner an equivalent in money for his land taking, as guaranteed by the constitution, and if it is not adequate it cannot be an exclusive one. Pierce, 163; 17 Fed. Rep. 466. A consent to the taking, under the constitution, and a consent to the entry, under the statute, only has the effect to make the possession of the company a legal possession, and the possession when taken makes the right of the land-owner to an equivalent in money, absolute. Before the land was taken the right never existed. Can it be that when the land is taken the right vanishes and is extinguished?

*No Waiver.*—No consent of the land owner which does not by its terms vary or release the constitutional right to a money equivalent, can in any event affect his right to such equivalent, or any remedy that the law may give him for its enforcement. *Perkins* v. *Me. Cen. R. R.*, 72 Me. 95; Pierce, 131; *Reed* v. *Lamoille Valley R. R. Co.*, Franklin County, January Term, Sup. Ct., 1879; *Wade* v. *Hennessy*, 55 Vt. 207.

So it seems that there ought not only to be a remedy but a complete remedy, so that there should be no denial of any right. It would be a painful commentary upon the law, if a court of equity should hold that where one is in possession of land without

title, with an obligation resting upon him to pay an equivalent in money, and a party who has the title has an absolute right to the land or the equivalent, that there was no remedy to meet the case.

This court has decided in two cases involving the question of such remedy, that there is a remedy, and the remedy prayed in the bills in these cases: *Kendall* v. *M. & C. R. R. R. Co*, 55 Vt. 438; *Reed* v. *Lamoille Valley R. R. Co.*, *supra*. The last two cases are decisive that the mortgagee takes only the right of the mortgagor.

*Bates & May*, for the orators, Dean and Bugbee.

At the time Mrs. Bugbee's land was taken she was a married woman. The Statute of Limitations cannot be a bar to her claim. *Perkins* v. *Me. Cen. R. R. Co.*, 72 Me. 95; *Cox* v. *R. R. Co.*, 48 Ind. 178. There is no remedy at law. *McAuley* v. *Western Vt. R. R. Co.*, 33 Vt. 311; 39 Vt. 275; 45 Vt. 215; *Provolt* v. *R. R. Co.*, 57 Mo. 256. It is in Equity. *Kendall* v. *M. & C. R. R. Co.*, 55 Vt. 438; *Wade* v. *Hennessy*, 55 Vt. 207, *Dean's case.* The agreement to accept the appraisal of two men named gave no consent to a permanent occupation of his land; no right as to the payment of his land damages was waived; and no title to the land ever vested in the company. *Evans* v. *R. R. Co.*, 64 Mo. 453; 1 Story Eq. J. s. 439. Different actions are allowed in the different states. In Georgia, an action at law: *Atlanta R. R. Co.* v. *Hodnett*, 36 Ga. 669; in New York, ejectment or trespass: *Lyon* v. *Jerome*, 26 Wend. 485; in Maine and Wisconsin, trespass: *Sherman* v. *R. R. Co.*, 40 Wis. 645; 40 Wis. 653; 72 Me. 95, *supra;* in Pennsylvania, ejectment: *McClinton* v. *R. R. Co.*, 66 Penn. St. 404; in Indiana, ejectment or an injunction: *Cox* v. *R. R. Co.*, 48 Ind. 178; in Ohio, an injunction, or a sale of the railroad: *Chapman* v. *R. R. Co.*, 6 Ohio, 119; *Dayton R. R. Co.* v. *Lawton*, 20 Ohio St. 401. An injunction in equity is the proper remedy. *Kendall* v. *M. & C. R. R. R. Co.*, *supra;* 69 Mo. 633. There

was no remedy at law. *McAuley* v. *Western Vt. R. R. Co.*, *supra;* where there is no remedy at law, equity lends its aid: Pierce Railways, 163, 167. Waiver. The court will not find a waiver without full, distinct, and unequivocal proof. *Unangot's Appeal*, 55 Penn. St. 129. Private property cannot be taken for public uses without compensation. The compensation must precede the title—actual payment of the damages, or no vesting of title in the company. *Bursley* v. *R. R. Co.*, 13 Cal. 306, 316; *Gray* v. *R. R. Co.*, 13 Minn. 315; *Hursch* v. *R. R. Co.*, 17 Minn. 439; *Gear* v. *R. R. Co.*, 20 Iowa 523; *Baltimore R. R. Co.* v. *Nesbit*, 10 How. 395; *Bloodgood* v. *R. R. Co.*, 18 Wend. 9; *R. R. Co.* v. *Callendar*, 13 Kan. 596; *Loop* v. *Chamberlain*, 20 Wis. 125; Cooley Con. Lim., pp. 181, 561–2; *N. C. R. R. Co.* v. *Jones*, 12 Rep. 645; *Walther* v. *R. R. Co.*, 20 Mo. 277. If there was a sale (which we deny). the defendant must first perform the conditions on its part and pay. Pomeroy, Spec. Perf. ss. 32, 115; *Stark* v. *Wilder*, 36 Vt. 752; *R. R. Co.* v. *Battle*, 66 N. C. 540; *Hubbard* v. *R. R. Co.*, 63 Mo. 68; *Aiken* v. *R. R. Co.*, 26 Barb. 289; *Drury* v. *R. R. Co.*, 127 Mass. 571; *Coe* v. *N. J. M. R. R. Co.*, 30 N. J. Eq. 21; S. C. 31; N. Y. Eq. 105; *Gray* v. *R. R. Co.*, 37 Iowa 119.

We maintain that the orator has a claim upon the land akin to the vendor's lien, which equity will enforce. Such was the law of Vermont as to all purchasers of land up to 1851. *Manley* v. *Slason*, 21 Vt. 271. See Judge REDFIELD's remarks in *McAuley* v. *Western Vt. R. R. Co.*, *supra*, p. 322; *Gilman* v. *R. R. Co.*, 37 Wis. 317; *Coe* v. *N. J. M. R. R. Co.*, *supra*; *Plot* v. *R. R. Co.*, 65 N. C. 74.

*H. S. Royce*, for the defendant, the Missisquoi Railroad Co.

The appraisal made by E. H. Powell and others, styling themselves commissioners, was inadmissible. The appraisal must be made within two years. R. L. s. 3371. This one was not made until more than five years after the land was taken by the consent of the orators' intestate.

There was no record of the appointment of the commissioners, nor any legitimate evidence of their appointment. Mr. Powell said he had an impression that they had some kind of a commission.

There was no evidence to show an appointment by the Supreme Court.

There was no record or paper of which the contents could be shown.

· Edward A. Smith testified that the company joined in the request for the appointment of commissioners, which clearly shows that it was not a commission by two judges of the Supreme Court.

The testimony of Judge Royce and Edward A. Smith was properly admitted. They were not parties to the suit, to the "cause of action," nor to any "contract in issue."

_Poquet_ v. _North Hero_, 44 Vt. 96 ; _Cheney_ v. _Pierce_, 38 Vt. 515 ; _Cole_ v. _Shurtleff_, 41 Vt. 311 ; _Morse_ v. _Low_, 44 Vt. 561.

The testimony clearly establishes the fact that the orators' intestate consented that the company might enter and take the land for the construction of its road, the company to pay the intestate's damages, if the parties could agree on the amount ; and if not, such sum as commissioners should award. Commissioners in such a case could only act as arbitrators, but as such, their award would be binding.

Upon the facts found the orators are not entitled to relief, and cannot sustain this suit, as against Smith, Cheney and Stevens. _McAuley_ v. _Western Vt. R. R. Co._, 33 Vt. 311 ; _Knapp_ v. _McAuley_, 39 Vt. 275 ; _Troy & Boston R. R. Co_ v. _Potter_, 42 Vt. 272 ; 1 Redf. Rail. 366 ; R. L. s. 3359. The Statute of Limitations is a good defence to the suit. 1 Redf. Rail. 336, 351 ; R. L. s. 3371.

_Poland_, for defendant, the St. Johnsbury & Lake Champlain Railroad Co.

The defendant claims that the orator, by allowing the Essex County R. R. Co. to take his land and convert it into a public railroad, and by the arrangement with them as to the future

ascertainment, and payment for his land, lost all right to reclaim the land by suit either at law or in equity; and having given credit to that company for his land, his only remedy was against it.

In *McAuley* v. *Western Vt. R. R. Co.*, 33 Vt. 311, it was held that when the land owner acquiesces in the construction of a railroad over his land without prepayment of his damages, and the road is constructed and put in operation, he cannot afterwards, on failure to obtain payment, maintain trespass or ejectment for the land. *Knapp* v. *McAuley*, 39 Vt. 275, was the same case in another form, and the same doctrine was reasserted there. These cases were fully approved and followed in the case of *Austin* v. *Rutland R. R. Co. et al.*, 45 Vt. 215; *Potter* v. *Troy & Boston R. R. Co.*, 42 Vt. 265. *Kendall* v. *M. & C. R. R. R. Co.*, 55 Vt. 438, is not in conflict with these.

The principle upon which all the cases in this State have proceeded, is, that if the land owner waives his right to exact payment for his land in advance, and consents to have his land become a part of a public railroad, his right to reclaim his land is gone. He has given credit for it to the railroad company and has just the same remedies, and no more, as for the collection of any other debt.

Our statute is founded on the same idea, and provides that if payment in such case is delayed for two years the party need wait no longer for appraisal proceedings, but may resort to an action at law to recover the price of his land. If the consent be accompanied by a special agreement that a party shall retain his lien on the land, then the courts will enforce it, as held in the recent case of Kendall, and suggested by Judge BARRETT in the 39th Vt.

Where no such lien is reserved by contract, and the party has given credit to the company, it is absurd to say that a party cannot reclaim his land by an action at law, but may do the same thing by a suit in equity.

In the case of *R. R. Co.* v. *Lewton*, 20 Ohio St. 401, Lewton had a vendor's lien. Our statute cuts that off.

In several cases where railroads have been constructed over lands, without any agreement with the owner, and nothing paid, the owner has been allowed to maintain ejectment or trespass, even where he saw the road being built, and did not object. *Perkins* v. *Me. Cent. R. R. Co.*, 72 Maine 95; *Daniels* v. *C. I. & N. R. R. Co.*, 41 Iowa, 52; *Conger* v. *Bur. & S. W. R. R. Co.*, 41 Iowa, 419.

In no case that I have seen, where the land owner has consented to the building of the road, without prepayment of damages, relying on some contract with the company for future payment, has the land owner been allowed to reclaim his land.

The opinion of the court was delivered by .

TAFT, J. I. The first question made is whether the witnesses, Royce and Smith, were competent. In making the contract with the intestate they acted as agents of the railroad company, and the plaintiffs claim that as Kittell is dead the agents of the company who made the contract with him should be excluded as witnesses by force of R. L. ss. 1002–3. Those sections apply to *parties* only, and do not exclude a mere agent or officer through whom a party negotiates. *Poquet* v. *North Hero*, 44 Vt. 91; *Cheney* v. *Pierce*, 38 Vt. 515.

II. The railroad company entered upon the land by consent of the owner, under an arrangement, that it might build the road, and when built, if they could not agree upon the damages, the same should be ascertained by leaving it out or having them fixed by commissioners.

The damages were subsequently appraised by commissioners. The defendants at the hearing before the master objected to the admission of the award in evidence upon the ground that it was not made within two years from the time of such entry. There is no limit fixed by the statute within which the commissioners may be called out. No action can be brought by the land owner, under s. 3371 R. L., until the expiration of two years from the time of the entry; but commissioners may be appointed at any time while the damages remain unliquidated. It would be rank

injustice to hold that the land owner was deprived of pay for his land because its value had not been appraised, when he had no power to institute proceedings for an appraisal. Such proceedings can be instituted only " upon application for that purpose by the corporation."

Neither was it a tenable objection that there was no record or other legitimate evidence of the appointment of the commissioners. The law does not require such record, and the loss of the commission being shown, parol evidence was proper to establish the fact of the appointment.

III. The Statute of Limitations is insisted upon as a defence to this suit, and s. 3371 R. L. is cited to sustain such claim. This is not an action brought under that section. The award was made on the sixth of December, 1875, and this suit was brought in the year 1880, and is clearly not barred by the statute.

IV. The important question in this case is, what effect did the arrangement made by the railroad company and the orators' intestate have upon the latter's rights as land owner. The report shows that Kittell consented to the entry upon his land and to the construction of the road, under an arrangement as to the mode of ascertaining his damages, and subsequently being unable to agree upon the amount, the same were determined by commissioners, and remain unpaid. The defendants contend, having entered upon the land by consent of the owner, that he had no rights remaining in the land itself, but that the road became his debtor for its value at the time, and cannot now be disturbed in their possession, and that the mortgagees of the land hold it free from all claim whatever of the original owner. To give effect to this claim we must hold that consent to an entry upon land for the purpose of constructing a railroad, and without payment of its value, and without conveyance of it by the owner, with an agreement as to a future adjustment of damages, constitutes a complete contract of sale, the same as though the land had been conveyed by the owner and paid for. We think there is no authority for such holding. Unless by clear and express contract the land

owner should not be deprived of compensation, and the right to retain a lien upon the land taken for its payment.

The cases of *McAuley* v. *The Western Vt. R. R. Co. et al.*, 33 Vt. 311, and *Knapp et al.* v. *McAuley and others*, 39 Vt. 275, are cited by the defendants as sustaining the claim that the orators are not entitled to any equitable relief. They have been so often cited for that purpose that it is well to understand what is decided by them. McAuley brought an action of ejectment against the road, and, whether he could maintain it or not was the question in the first case; and the latter cause was a bill in equity to enjoin the former.

In the equity suit Judge BARRETT, in delivering the opinion of the court, said: "We adopt and reassert the doctrine propounded in the case of *McAuley* v. *The Western Vt. R. R. Co. and Clark*, 33 Vt. 311, that if the land owner foregoes his right to have his damages ascertained and paid before the making of the road over his land is commenced, and, under some arrangement as to the subsequent ascertainment and payment of his damages, consents that the work may proceed before the damages are to be ascertained and paid, he cannot thereafter interpose and prevent the work in progress, or prevent the use of the road; nor, unless, at least, there is some special and binding contract to that effect, can he assert a lien on the land taken and occupied for the road, in the nature of a mortgage for the purchase money, or value of the land."

This holds that in those cases where by consent of the land owner the company enters upon the land and constructs their road without pre-payment of the damages, the owner loses all right and interest in his land either at law or in equity. We do not understand that the McAuley case propounds any such doctrine and we refer to the case itself to ascertain what was before the court, and what was decided. The facts were shown that McAuley had agreed with the company to receive, in payment for his damages, stock of the company at its par value; that certificates were issued in his name for the requisite amount and tendered him, but he refused them, and they were deposited

with the clerk for his use. Here was an agreement between the parties that the company might enter upon the land and construct their road and pay the owner in stock, which was duly tendered him. The company had performed all that they were required to perform, had taken the land, and in effect *paid for it*. Having entered upon the land by consent they were not trespassers, and having *tendered payment* for it in the manner agreed upon, they were entitled to a specific performance of the contract, and it was well held that neither trespass nor ejectment would lie. But the court say that while the party cannot assert his claim in such a form as to stop the company in the progress of their works and in operating them, that he " does not, of course, lose his claim or the right to enforce it, in all proper modes. He may possibly have some rights analogous to the vendors lien in England, and here, until the legislature cut it off." This, although the vendor's lien has been abolished in this State, recognizes an equitable one upon the land in behalf of the land owner, although he has consented to the entry upon his premises. And the learned Chief Judge REDFIELD, who delivered the opinion, in his work on railway cases, suggests a remedy by placing the road in a receiver's hands until the earnings would pay the land damages. There is nothing therefore in the McAuley case warranting the claim of the defendants.

We, therefore, hold that where a railroad company has entered upon land and constructed its road without making compensation to the land owner, and such entry and construction wer by the latter's consent, that ejectment and trespass cannot be maintained; and the same rule should apply where the original entry was without the consent of the land owner in case he stands by and, knowing of the entry and construction, makes no objection to it and permits the road to be used for years. He should, under such circumstances, be held to have acquiesced therein. But the owner should not be deprived of compensation for his land; he is entitled to an " equivalent in money " and he ought not to be held estopped from asserting a lien upon the land by such consent, with an accompanying agreement, as to the amount of his

damages, or by submitting the same to the award of arbitrators. If the transaction between the parties constitutes a contract of sale the land owner should then look to his debtor for payment, and has no lien unless by express contract.

In the cases under consideration the facts do not warrant us in saying that there was, in either, a contract of sale ; all stand upon the law governing the taking of land by virtue of the right of eminent domain.

We do not say that an action at law, under the statute, cannot be maintained against the takers of the land under such circumstances ; but having, as we think, an equitable lien upon the land there is no reason why the owner is not entitled to a remedy in chancery to enforce it. What that remedy should be is for the court to determine. As before stated, it was suggested by the late Chief Judge REDFIELD (2 Red. Am. Railw. Cases, 2d ed., 253) that the road could be placed in the hands of receivers until the damages were paid from the earnings. This in most cases would be a needless proceeding ; and our courts have adopted an effective, expeditious, and probably a less expensive, method by enjoining the company from using the land until the damages are paid. *Reed* v. *Lamoille Val. R. R. Co.*, Sup. Court, Fr. Co., Jan. T., 1879 ; *Kendall et al.* v. *Mis. & Clyde R. R. R. Co. et al.*, 55 Vt. 438.

V. In whatever manner the company took the land a record of the proceedings should have been made to complete their title. The record title remained in the original owner, and the land not being paid for, a subsequent vendee was chargeable with notice of the equitable lien resting upon the land, and took it subject to that burden.

The orators are entitled to a decree for the six hundred dollars assessed as damages, with interest since the first day of December, 1870, the date of entry upon the land. The master reports that the defendants have not constructed the crossings and cattle pass, nor restored the water course, which are mentioned in the commissioners' award, and that the orators' damages resulting therefrom to the fourth day of December, 1882, amount to the

sum of two hundred dollars; and there should be a decree for the payment of that sum with interest from the last named date.

The *pro forma* decree of the Court of Chancery is reversed, and cause remanded with a mandate that a decree be entered for the orators in accordance with the foregoing views; and for the reasons given herein, the cases of Hart v. the same defendants, and Bugbee v. St. Johnsbury & L. C. R. R. Co., and Dean v. the latter, are disposed of in like manner.